**HILL et al. v. DALE et al.**
No. 6724.

District Court, Alaska. Fourth Division. Fairbanks.
June 27, 1952.

George B. McNabb, Jr., and Robert A. Parrish, of Fairbanks, for plaintiffs.

Warren A. Taylor, of Fairbanks, for defendants.

PRATT, District Judge.

Upon the first day of November, 1949, Leo Preg was the owner of a certain tract of land with a two-story building thereon more particularly described in the pleadings herein.

Upon November 1, 1949, Leo Preg, as grantor, and R. P. Hill and his wife, Mary Hill, as grantees, entered into a written contract wherein the grantor gave the grantees the exclusive right for six months to purchase said property for $30,000.

Upon the 29th day of April, 1950, said grantees tendered said grantor $30,000 in cash in execution of said option. As the day was Saturday afternoon and no banks were open, the grantor asked the grantees to give him a check instead of the $30,000 in cash inasmuch as he did not have a safe. To this the grantees agreed. They gave the grantor a check for $30,000 and he delivered to them a deed to said property duly executed. The delivery of said deed vested title to said premises in said grantees, R. P. Hill and Mary Hill.

Plaintiff R. P. Hill testified as to the request of Mr. Preg for the check instead of the cash. He further testified that he delivered the $30,000 check to Mr. Preg and that the same came back to him as a canceled check deducted from his account by the bank. The evidence showed no claim on the part of Mr. Preg that he had failed to receive the money represented by the check. Mr. Preg had signed a receipt

for the check, Plaintiff's Exhibit H, and the First National Bank of Fairbanks, Alaska, had stamped thereon:

> "Pay to the Order of any Bank or Banks
> All Previous Indorsements Guaranteed
> May 4, 1950
> First National ————————
> 59–7 Fairbanks, Alaska."

Perforations appear on the check:

> "Paid
> 7:5:50
> 59–20."

The check is drawn on the Bank of Fairbanks, which apparently has the symbol "59–20," as the same appears on the face of the check (Plaintiff's Exhibit G), and thereby indicates that the Bank of Fairbanks made the perforations above mentioned.

The defendants conducted the Sportsman Shop in the ground floor portion of the building on the premises described in the pleadings in this case. They had rented this place from Mr. Preg in about 1945 with no definite terms except that the rent was $150 per month. They had attorned to Mr. Preg, who had placed them in possession. The defendants learned that the Hills had purchased said property and attorned to the Hills as their landlord by paying the rent for May and June of 1950 (Plaintiff's Exhibit C receipts Nos. 2 and 4, also Defendant's Exhibit 2). They tendered additional rent later on but Mr. Hill refused to accept it inasmuch as he and his wife had given the defendants notice to vacate the premises. However, the attornment of the defendants to the Hills was complete with the payment of the first rent on May 6, 1950, for rent from May 1 to June 1, 1950 (Plaintiff's Exhibit C). Thus the defendants as tenants of the Hills would be estopped from denying the title and right of possession of the Hills even if the alleged warranty deed (Plaintiff's Exhibit A) had

been a deed. Corporation of the Catholic Bishop of Nesqually v. Gibbon, 158 U.S. 155, 15 S.Ct. 779, 39 L.Ed. 931; 32 Am.Juris.S. 101, p. 108.

By notice of date May 5, 1950, addressed to all the above-named defendants and signed by Rudell P. and Mary Hill, the defendants were notified that the Hills were the owners of said property and that they would require the possession of the same on or before the 10th day of June, 1950, and that they "respectfully demanded" the vacation of the premises not later than June 10, 1950. This notice was enclosed in a registered letter addressed to Henri F. Dale and received by him as shown by the return receipt for the registered letter (Plaintiff's Exhibit K), the notice being Plaintiff's Exhibit J. While this notice was waived by acceptance of rent it remained notice that the Hills were the owners of said premises.

In the first part of July 1950, Mr. Preg, having learned that Mr. Hill was paying eight percent per annum interest to the bank on the $30,000 he paid to Mr. Preg, told Mr. Hill he would like to be getting that eight percent himself, and an agreement was entered into by Mr. Preg and the Hills (Tr. p. 11 Testimony of Mr. Hill), which is shown also in Plaintiff's Exhibit I entitled "Conditional Sales Contract." The Conditional Sales Contract sets forth that Leo Preg, the vendor, and R. P. Hill and Mary Hill, the vendees, agree that the vendees will pay the vendor the sum of $30,000 payable $5,000 at the time of the execution of said agreement, "the receipt whereof is hereby acknowledged," and the sum of $220 on or before the 13th day of August, 1950, plus interest thereon at the rate of eight percent per annum payable on the 13th of each month until the whole unpaid balance is fully paid. The Conditional Sales Contract further provides that "vendees are entitled to the immediate possession of said property and shall assume all risks incidental to the ownership thereof." The instrument requires the vendees to insure the property against loss and to pay all taxes and assessments and to

keep the same in good repair and condition. It is fully acknowledged and executed by Leo Preg, R. P. Hill, and Mary Hill, in the presence of two witnesses.

By letter dated July 14, 1950, the attorney for said vendees and in their behalf wrote Essie R. Dale, one of the defendants in this action, stating that his clients, the Hills, were legally and morally entitled to the possession of the property in controversy and urging her to vacate peaceably and suggesting a discussion of the matter at her early convenience.

On or about the 29th day of April, 1950, when the Hills paid the purchase price and received the deed to the same, they took actual possession of the second story of said premises in controversy, and of course by reason of the attornment of the defendants they had possession of the ground floor thereof. This possession by the Hills actually and through tenants continued at all times on and after the 29th day of April, 1950, and the defendants either expressly knew about it or should have known about it by reason of the facts of this case.

It should be specially noticed that said Conditional Sales Contract clearly provided that the Hills were entitled to the possession of said property from and after the execution of said Conditional Sales Contract (page 2 of Plaintiff's Exhibit I).

On November 13, 1950, said Conditional Sales Contract was duly recorded as instrument No. 121, 169 in the office of the Recorder for the Fairbanks Precinct, Fourth Judicial Division, Territory of Alaska, wherein said premises lie.

As instrument No. 121, 170, on November 13, 1950, at five minutes past ten a. m., an alleged "Warranty Deed" by Leo Preg as grantor and Henri F. Dale and Auribert LuVern Dale as grantees was filed with said Recorder. It recited a consideration of one dollar and other good and valuable considerations. As shown by the instrument num-

ber above mentioned, the filing of the alleged "Warranty Deed" was subsequent to the filing of the "Conditional Sales Contract," inasmuch as instruments filed are given consecutive numbers in accordance with the priority with which they are presented to the Recorder. Said alleged Warranty Deed was dated November 10, 1950. It was not in fact a deed at all, as was shown by Plaintiff's Exhibit B filed November 13, 1950, as instrument No. 121, 185. This last-mentioned instrument was a defeasance agreement showing that said alleged warranty deed was made as a mortgage and an agreement on the part of the Dales to re-deed said property to Leo Preg at any time within two years of November 10, 1950, and upon said reconveyance that the mortgage executed by the Dales to Preg should be satisfied except as to $150 per month which should be considered as rental for the premises up to the time of reconveyance.

██ In the Affirmative Defense of the defendants in this cause they set up that they were the owners of said property by virtue of said warranty deed and that at the time of the execution of said deed they had no knowledge, actual or constructive, of the contract between Leo Preg and the plaintiffs as set forth in said Conditional Sales Contract. It is believed that the evidence is very convincing that the defendants were not innocent purchasers in good faith without knowledge of the Conditional Sales Contract above mentioned. As a matter of fact, under no conditions could said alleged warranty deed be considered anything but a mortgage when taken in connection with the defeasance instrument filed for record the same day (Plaintiff's Exhibit B). Likewise the recording of the Conditional Sales Contract (Plaintiff's Exhibit I), being prior to the recording of any instrument involved in this case by the defendants, would take precedence thereof, as provided by Section 22–3–25, A.C.L.A.1949. Nestor v. Holt, 1 Alaska 567. Sec. 98, p. 373, Part V, Carter's Annotated Alaska Codes, 31 Stat. 505, construed in said Nestor case is iden-

tical with Section 22–3–25, A.C.L.A.1949, except that the earlier act uses the word "District," whereas the later section substitutes the word "Territory" for "District."

 The burden of proof was upon the defendants to prove themselves innocent purchasers. They have not done so in any respect whatsoever. The evidence shows defendants to have had both actual and constructive knowledge of plaintiffs' ownership in said property in controversy.

In the agreement between Mr. Preg and the Hills, the Hills paid $5,000 down on a $30,000 sales price and agreed to pay $220 per month, plus eight percent per annum interest on the balance due. The defendants claim that Mr. Preg knowingly made an agreement that they should have the property with no down payment and with a payment only of $150 per month, thus making a contract disadvantageous to Mr. Preg when compared with said Conditional Sales Contract.

██ Said Conditional Sales Contract undoubtedly constitutes an executory contract, as mentioned in Section 22–3–33, providing that every executory contract for the sale of land, when acknowledged in the manner prescribed in Title 22 and recorded, may be read in evidence in any court in Alaska without further proof of the same.

██ In addition to the matters hereinbefore mentioned, it appears that the legal title to said premises is still vested in the Hills, as they received the same by the deed delivered to them by Mr. Preg on the 29th day of April, 1950. True, Mr. Hill handed this deed back to Mr. Preg in order to make up the agreement set forth in said Conditional Sales Contract, but such handing back merely constituted a pledge with the deed as security and did not constitute a conveyance of said property. For the Hills to have divested themselves of said title it would have been necessary for them to execute a deed in the manner prescribed by Title 22,

A.C.L.A.1949. When Mr. Preg executed said alleged Warranty Deed he had no title to the property in controversy and could not convey said property to Mr. and Mrs. Henri Dale.

■ The oral rental agreement between the defendants and Leo Preg clearly constituted nothing but the granting of an estate at will to the defendants. Section 22–1–4, A.C.L.A.1949, provides that to recover possession of an estate at will advance notice to vacate shall be served on the tenant which is not less than the interval between the times of payment of rent. Thus, in this case to terminate the estate at will of the defendants, it was merely necessary to give them a notice to vacate one month in advance. Such a notice was given on the 23rd day of January, 1951 (Plaintiff's Exhibit D), which notice was duly served by the United States Marshal upon each of the five defendants.

The undisputed evidence is that the plaintiffs have made all payments owing by them to Mr. Preg under said Conditional Sales Contract (Plaintiff's Exhibit I).

■ As a witness upon the trial of this case, Auribert Dale testified as follows to the following question:

"Have you ever been a member of the co-partnership known as Sportsman Shop?

"Answer: No."

Auribert Dale, the wife of Henri Dale, was a defendant in this case from the beginning. In the original complaint it was not stated the defendants were co-partners. That feature was interlineated into the title of the cause as well as in paragraph four of the complaint, and thereafter Auribert Dale appeared in the case along with the other four defendants. They appeared by the same attorneys and jointly and at no place in the pleadings was there any special claim on the part of Auribert Dale that was not shared in by the other defendants. Nor was there any attempt on the part of Auribert Dale to differentiate her interest in

the case from that of the other defendants. It is therefore believed that the declarations of Auribert Dale in the pleadings in the cause overcome her oral testimony and show that she was a member of said co-partnership.

The evidence is very clear that the premises occupied by the defendants have approximately 975 square feet and that a reasonable rental value of said premises is 45 cents a square foot. The damage to be allowed to the plaintiffs in this case is, therefore, $150.00 a month from July 1, 1950, to March 1, 1951, and $438.75 (975 times 45¢) for each month the defendants failed to vacate the same after the first day of March, 1951.

Plaintiffs may prepare, serve, and lodge findings of fact, conclusions of law, and judgment in conformity with the foregoing.