**ALASKA STATE HOUSING AUTHORITY,
Appellant,**

**v.**

**John CONTENTO, Jr., et al., Appellees.**

**John CONTENTO, Jr., and Eleanor
Contento, Appellants,**

**v.**

**ALASKA STATE HOUSING AUTHORITY,
Appellee.**

Nos. 729, 745.

Supreme Court of Alaska.

Oct. 2, 1967.

Allen L. Jewell and Martin A. Farrell, Jr., Anchorage, for appellant and appellee, Alaska State Housing Authority.

Robert A. Parrish, Fairbanks, for cross-appellants and appellees John Contento, Jr. and Eleanor Contento.

Before NESBETT, Chief Justice, DIMOND, Associate Justice, and SANDERS, Superior Court Judge.

NESBETT, Chief Justice.

The appellees John and Eleanor Contento were the owners of the Family Shoe Store, located in a building in Fairbanks which had been purchased by appellant Alaska State Housing Authority in connection with its downtown urban renewal project. According to appellant's testimony, the appellees were dilatory in removing their merchandise from the premises, and because of this appellant's demolition contractor was in the process of demolishing one portion of the building while appellees were still engaged in moving their merchandise to new premises next door. Strained relations existed between the parties and continued to the time of trial.

We shall consider first the issue raised in appeal file number 729.

In this suit by the appellees to recover $19,000 as the cost of relocating their business, the jury was instructed by the court to find for the appellees in such amount as it "shall find was reasonably expended by plaintiffs (appellees) in relocating their business." Appellant objected to this instruction, contending that 42 U.S.C. § 1456(f) (2) (1958) limited the amount which could be paid to a maximum of $3,000. The jury returned a verdict for $7,000.

The single question raised by Alaska State Housing Authority's appeal is whether the trial court erred in instructing the jury that appellee could be awarded the amount "reasonably expended" by him in relocating his shoe store without at the same time instructing that the amount awarded could not in any event exceed $3,000.

Determination of the question must turn on a construction of certain provisions of Title I of the Housing Act of 1949 as amended, pertaining to slum clearance and urban renewal, when read in relation to certain provisions of Alaska's urban renewal statutes.

A part of the congressional policy declared in the Housing Act of 1949 was that of "the elimination of sub-standard and other inadequate housing through the clearance of slums and blighted areas", to be accomplished insofar as possible by private enterprise assisted by the government and, as stated in the act, "appropriate local public bodies shall be encouraged and assisted to undertake positive programs of encouraging and assisting the development of well-planned, integrated residential neighborhoods, the development and redevelopment of communities".[1] No specific provision was made in the original act for the making of relocation payments, although Section 105(c) of Title I did provide that contracts (with governmental units participating in an urban renewal project) should require that "[t]here be a feasible method for the temporary relocation of families displaced from the project areas * * *".[2]

1. 42 U.S.C. § 1441, 63 Stat. 413 (1949).

2. Act of July 15, 1949, ch. 338, § 105(c), 63 Stat. 417 (1949).

Subsequent to enactment of the Housing Act of 1949 the Alaska Legislature in 1951 enacted its Slum Clearance and Redevelopment Law [3] which stated in part that it was the legislature's intent "to take full advantage of title 1 of the Housing Act of 1949".[4]

The issue, as briefed by appellant, centers around the wording contained in subsection 1456(f) (2) of the Housing Act of 1949. That section generally defines the powers and duties of the federal administrator and provides for the budget and maintenance of accounts and the audit of accounts. As of May 1, 1961, when the facts of this case arose, subsection (f) (2) provided that business relocation payments shall not exceed $3,000.[5]

On the other hand, AS 18.55.520, the Alaska statute which defined the powers and duties of the Alaska Housing Authority, stated in subsection (H) (8) that one of its duties should be:

to prepare plans and *provide reasonable assistance* for the relocation of families displaced from a redevelopment project area * * *. (Emphasis added.)

Appellant's argument is that the federal act is national in scope and where it speaks on the issue of business relocation allowances it should control because the Alaska act was enacted to take full advantage of the federal act and makes no specific provision for paying business relocation costs.

In support of its argument appellant ASHA cites 42 U.S.C. § 1443 which provides that the federal act should control over inconsistent provisions in state acts,[6] and refers to the several restrictive conditions imposed as conditions to federal participation contained in sections 1451 and 1453. However, appellant seems to rely principally upon the fact that because the federal act provides for proportional federal and state financial participation, with the one exception: that being section 1456 (f) (1) providing that the state was not required to provide any part of any amount allowed as a relocation payment, the federal act should control because it provided in 1456(f) (2) that the maximum amount allowable for relocation of a business should be $3,000.

Appellee has not filed a brief responding to the above issue. Appellant's supplemental brief is incomplete and of limited usefulness since it has not cited and given the court the benefit of discussion of all amendments to the Housing Act of 1949.

In order to place the issue in full perspective all pertinent amendments of the Housing Act of 1949 will first be reviewed.

As has been mentioned, the original act made no provision for any relocation payments although Section 105(c) of Title I required that contracts provide a feasible method for the temporary relocation of families.[7]

In 1954 the act was amended to provide that the Administrator had the final authority to determine whether the relocation requirements of Section 105(c) of Title I had been met and that this authority could not be delegated or transferred to any other official.[8]

In 1956 Congress added subsection (f) to Section 1456 of Title 42 United States Code which provided in (f) (1) for the first time that relocation payments could be made and that no part of the amount of such relocation payments was required to be contributed by the participating local

---

3. SLA 1951, ch. 105; now contained in AS 18.55.010 et seq.

4. SLA 1951, ch. 105, § 23; now AS 18.55.490.

5. Note 11 infra.

6. 42 U.S.C. § 1443 (1964) states: Insofar as the provisions of any other law are inconsistent with the provisions of this Act, the provisions of this Act shall be controlling.

7. See page 3 supra.

8. Act of Aug. 2, 1954, ch. 649, § 101(c), 68 Stat. 623 (1954).

governmental unit.[9] Subsection (f) (2) stated in part that the payments:

> shall not exceed $100 in the case of an individual or family, or $2,000 in the case of a business concern.

In 1957 subsection (f) (2) was amended to provide that relocation payments:

> shall not exceed $100 in the case of an individual or family, or $2,500 in the case of a business concern.[10]

In 1959 subsection (f) (2) was again amended to increase the maximum relocation payments permissible to families and individuals to $200 and for business concerns to $3,000.[11] According to the appellant, the limitation of $3,000 established by this amendment is the maximum to which appellee John Contento was entitled.

In 1961 subsection (f) (2) was amended to state in pertinent part that:

> Such payments * * * shall not exceed $200 in the case of an individual or family, or $3,000 (or, if greater, the total certified actual moving expenses) in the case of a business concern or nonprofit organization.[12]

In 1964 subsection (f) was repealed and section 114 was added, which stated in part:

> (b) A local public agency may pay to any displaced business concern or nonprofit organization—
>
> (1) its reasonable and necessary moving expenses and any actual direct losses of property except goodwill or profit (which are incurred on and after August 7, 1956, and for which reimbursement or

compensation is not otherwise made): *Provided,* That such payment shall not exceed $3,000 (or, if greater, the total certified actual moving expenses) * * * .[13]

The same 1964 amendment enacted section 310(b) which stated:

> Any contract with a local public agency which was executed under title I of the Housing Act of 1949 before the date of the enactment of this Act [the act of Sept. 2, 1964] may be amended to provide for payments authorized by section 114 of the Housing Act of 1949. [i. e., Section 310(a) of Public Law 88–560] [14]

The above amendment was not mentioned in appellant's brief. We do not know whether it has an application to this case, although it would appear to have. For this reason we shall remand the case to the trial court for disposition under the provisions of the 1964 amendment, if that amendment has any application. In the event the 1964 amendment is found by the trial court to have no application, and in order to permit the case to be disposed of on remand, we shall decide now the question of whether AS 18.55.520 was intended to provide for the payment of any compensation for the relocation of businesses.

■■■ We hold that it was not. When enacted in 1951 the Alaska Slum Clearance and Redevelopment Law was intended to harmonize with and "take full advantage" of the federal Housing Act of 1949.[15] As of 1951 the federal act made no provision for the compensation of displaced families or businesses. All it required was that ur-

---

9. Act of Aug. 7, 1956, ch. 1029, § 305, 70 Stat. 1100 (1956).

10. Act of July 12, 1957, Pub.L.No. 85–104, § 304, 71 Stat. 300 (1957).

11. Act of Sept. 23, 1959, Pub.L.No. 86–372, § 409, 73 Stat. 674 (1959).
   The pertinent portion of 42 U.S.C. § 1456(f)(2) then stated:

   > Such payments * * * shall not exceed $200 in the case of an individual or family, or $3,000 in the case of a business concern.

12. Act of June 30, 1961, Pub.L.No. 87–70, § 304, 75 Stat. 167 (1961). This amendment was cited by appellant. Since its effective date was subsequent to the occurrence of the facts herein, it was not proposed by appellant that it had a controlling effect.

13. Act of Sept. 2, 1964, Pub.L.No. 88–560, § 310(a), 78 Stat. 788 (1964).

14. Act of Sept. 2, 1964, Pub.L.No. 88–560, § 310(b), 78 Stat. 790 (1964).

15. SLA 1951, ch. 105, § 23.

ban renewal contracts provide "a feasible method for the temporary relocation of families". Since the federal act made no provision for compensation, there is every reason not to construe the phrase "reasonable assistance" in the Alaska act as being anything more than a requirement that the Alaska Housing Authority also render reasonable assistance to families requiring relocation, as it would have been required to do in any event by the terms of each urban renewal contract because of the before-mentioned federal provision.[16]

It was not until 1956 that the federal act provided for relocation payments.[17] It is noteworthy that the compensation provisions were newly added sections and that the previously mentioned requirements of section 105(c) that all urban renewal contracts provide a feasible method for the temporary relocation of families was retained. No amendment was made to the Alaska act to correspond with the 1956 federal amendment, or any of the subsequent amendments, providing for monetary compensation. Further, the Alaska act provided for reasonable assistance to "families". No mention was made of businesses. When the federal act was eventually amended to permit compensation, it specifically named families and businesses as the recipients. It was error, therefore, for the court to have instructed the jury as it did.[18]

We shall now consider certain issues raised by the appellants Contento in case file No. 745.

It is alleged that the trial court erred in denying appellants' motion for summary judgment.

In support of their motion appellants alleged that no genuine issue of fact existed with respect to forty-seven statements of fact and law which were set out in full in the memorandum. In a memorandum in opposition to the motion appellee denied, in whole or in part, approximately thirty-five of the forty-seven statements. In denying the motion the trial court specifically set out four facts which it found to be in dispute.

Appellants then petitioned this court for review of the trial court's order denying summary judgment. The petition was denied by this court without opinion.

In Ransom v. Haner [19] this court said:

The purpose of summary judgment, authorized by Rule 56, Federal Rules of Civil Procedure, is to allow the court to dispose summarily of a case where the the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Its purpose is not to cut off litigants from their right to trial by jury on genuine issues of fact. Even though there may be considerable doubt as to the existence of a claim or defense, if it appears to be in good faith the party asserting it is entitled to a trial and an opportunity to examine the case or defense of his adversary in the usual course. (Footnotes omitted.)

Our review of the record convinces us that the trial court did not err in denying appellants' motion for summary judgment because there were genuine issues of fact to be resolved. We shall not at this time pass upon appellee's contention that the

**16.** Relocation assistance may take many forms aside from direct financial assistance as, for example, the giving of priority in public housing, the erection of new public housing facilities, assistance in locating housing vacancies and encouraging private capital to construct new facilities. See Urban Renewal: Problems of Eliminating and Preventing Urban Deterioration, 72 Harvard Law Review 504, at 532 (1959).

**17.** Supra note 9.

**18.** See page 118 supra.

**19.** 362 P.2d 282, 289 (Alaska 1961).

denial of the motion for summary judgment was a non-appealable order.[20]

Appellants next contend that the trial court erred and abused its discretion in failing to make specific findings of fact in denying their motion for summary judgment.

In Palzer v. Serv-U-Meat Co.[21] this court stated:

Our Civ. R. 52(a) specifically provides in part that:

'Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).'

Decisions which have construed the federal counterparts of our Civ. R. 52 and Civ. R. 56 hold that no findings of fact are necessary in ruling on motions for summary judgment. We conclude that in disposing of motions for summary judgment under our rules of civil procedure no findings of fact are required of the trial court. And we specifically hold that in granting summary judgment it is unnecessary for the trial court to make findings in regard to the lack of any genuine issues of material fact to be litigated. (Footnotes omitted.)

■ The trial court did not err in not making findings of fact in connection with its order denying appellants' motion for summary judgment.

Appellants' next point is that the trial court erred in refusing to grant appellants' motion that the jurors be permitted to maintain notebooks during the trial.

Appellants argue that the issues of liability and damages were so complex that the jury could not have remembered all the dates and important figures.

■ We hold that a trial court may, in its discretion, permit jurors to take written notes during trial.

■ Under the facts of this case it does not appear that appellants' case was prejudiced by the trial court's order refusing to permit the taking of notes. Appellants' exhibits were available to the jury and consisted in part of thirty-eight pages of appellants' bills for expenses incurred in relocating their store, a list of appellants' leasehold improvement expenses for the years 1945–1960, a list of appellants' moving costs and a document entitled "Goodwill Computation".

Appellants have not pointed out wherein they were prejudiced. We have found no prejudice and hold that the trial court did not abuse its discretion in refusing to permit the taking of notes.

Appellants' next point is that the trial court erred in giving instruction No. 8 which stated:

8. It has been decided by the Court that the Family Shoe Store was lawfully in the premises on May 1, 1961 under a month-to-month tenancy. Under such a tenancy, 30 days notice to vacate is required. It has been found by the Court that the Notice to Quit dated April 29, 1961, delivered by the defendant to the plaintiffs was a valid notice, terminating plaintiffs' tenancy on May 31, 1961. The plaintiffs had no tenancy rights in the Sig Wold Building at 310 Cushman Street after May 31, 1961.

Appellant excepted to the giving of the instruction on the ground that there was evidence in the case upon which the jury could have found a hold-over tenancy of not less than one year.

Appellants have not pointed out to the court the nature of the evidence which would have permitted a jury to find a hold-over tenancy of not less than one year or its location in the record.

■ The testimony of John Contento, Jr., and his then landlord Sig Wold has

20. See Heron v. City and County of Denver, 317 F.2d 309 (10th Cir. 1963); 6 Moore's Federal Practice, para. 56.20 [2], at 2745 (2d ed. 1965).

21. 419 P.2d 201, 205 (Alaska 1966).

been examined with some care. Prior to 1956 appellants had occupied the premises under two successive five-year leases containing options to renew. After January 1, 1956, appellants were offered only a three-year "exhibition" lease with changed terms. Appellants never signed this lease and continued to pay rent on a monthly basis thereafter. No other lease was ever executed. The testimony of Sig Wold was emphatic that appellants had refused to sign the proffered three-year lease and that thereafter appellants could have vacated the premises at any time by giving 30 days notice. The most that can be said for John Contento's testimony is that he may have thought that the facts amounted to an execution of an option of renewal for five years. The facts, however, were not disputed and the legal effect to be given to them was a question of law for the court to determine under the circumstances. We find no error in the trial court's determination that a month-to-month tenancy at will existed.[22]

■ Appellants next contend that the trial court erred in refusing to give appellants' requested instruction No. 4 which would have instructed the jury that some forty-four statements of fact contained in the instruction were admitted or uncontradicted. The basis for appellants' exception was that the appellee had not denied the statements.

The record in this case contains over 1300 pages plus exhibits. Appellants do not cite the court to any specific portion of the record to substantiate their argument that all the statements contained in requested instruction No. 4, some of which were in fact statements of law, were admitted by appellee. Under the circumstances and in view of the fact that appellants have ignored the requirements of Supreme Court Rule 11(a) (8) which requires that argument in the brief be referenced to pages of the record, we shall not attempt to consider this point on appeal.[23]

For the above reason and for the additional reason that appellants have not seen fit to devote more than a few sentences of inadequate argument, or no argument at all, to each point, appellants' specifications of error Nos. 6, 7 and 8 will not be considered.

The judgment below is set aside and the case is remanded to the trial court for further proceedings consistent with the views expressed herein. In the event amendments to the Housing Act of 1949 enacted subsequent to May of 1961, are found to be inapplicable to this case, the trial court shall proceed to determine which of the appellants' claimed relocation expenses are allowable under the provisions of the Housing Act of 1949 as of May 1961 and regulations promulgated thereunder, not to exceed the maximum of $3,000 provided for in the Act; and enter judgment in favor of the appellants Contento therefore.

22. See AS 34.05.020 which states:
    *Termination of estates at will or by sufferance.* An estate at will or by sufferance may be ended by either party, by three months' notice in writing given to the other party. When the rent reserved in a lease at will is payable at periods of less than three months the time of notice is sufficient if it is equal to the interval between the times of payment. Hill v. Dale, 13 Alaska 690 (1952); Sellers v. Harvey, 11 Alaska 100 (1946).

23. Merrill v. Merrill, 388 P.2d 259, 261 (Alaska 1964); Thomson v. Wheeler Construction Co., 385 P.2d 111, 114 (Alaska 1963); Gregory v. Padilla, 379 P.2d 951, 954–955 (Alaska 1963).