John R. McCALL and John L. McCall,
Appellants,

v.

Lester FICKES and Dorothy Fickes,
Appellees.

No. 2611.

Supreme Court of Alaska.

Nov. 15, 1976.

Dennis E. Cook, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellants.

Thomas P. Blanton, Whiting & Blanton, Fairbanks, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

The McCalls have appealed a superior court judgment granting "restitution" of certain rental premises to Fickes. Substantively, the instant appeal raises questions concerning the relationship between the Uniform Residential Landlord and Tenant Act, AS 34.03.010 et seq., and Alaska's Forcible Entry and Detainer Law, AS 09.45.060, et seq.

The Fickes are owners of a mobile home park located near Fairbanks. In November of 1974 the J. McCall Company, a service company for pipeline contractors, purchased a trailer from Fairbanks Mobile Homes, for use as a residence for John McCall, Jr., who anticipated arriving in April of 1975. Pursuant to an agreement with the J. McCall Company, Fairbanks Mobile Homes located a space in the mobile home park owned by Fickes and placed the purchased trailer in an allocated rental space within the park.[1]

Prior to John McCall's arrival in April, 1975, Lester Fickes forwarded a letter to the J. McCall Company indicating that rent was due for a period of approximately five months and enclosed a rental agreement. Although the McCalls claim that the agreement was signed, it was not forwarded to Fickes at that time. However, rent for the previous approximate five-month period

was sent to Fickes. In May John McCall, Jr. arrived and proceeded to occupy the trailer. Rent for April and May was tendered and accepted early in May after a concededly defective notice of termination was received by Mr. McCall. At this point in time, rent for an entire year in advance was offered by the McCalls, but Fickes refused the offer. Thereafter, a second notice of termination giving McCall 40 days to vacate was forwarded on May 21, 1975. After receiving this notice of termination the McCalls tendered the June rent which was accepted by Fickes on May 27. A June 25th tender of the July rent for the trailer space was refused by Fickes and thereafter Fickes filed an action for Forcible Entry and Detainer seeking restitution of the trailer space from the McCalls.

After a non-jury trial the superior court granted Fickes his requested relief but stayed its judgment pending resolution of this appeal. We affirm the superior court's judgment.

Before reaching appellants' specifications of error, we think it appropriate to briefly discuss the tension between the Uniform Residential Landlord and Tenant Act and Alaska's Forcible Entry and Detainer statutes. The F.E.D. statutory scheme, the older of the two, is firmly grounded in the common law notion that possession of land is a privilege of the lord who has seisin. The F.E.D. statutes contemplate a summary proceeding which makes no provision for consideration of the tenant's claims or defenses, other than prepayment of rent.[2] The more recently enacted Uniform Act constitutes a basic reform of landlord-tenant law,[3] according

1. As part of its agreement, Fairbanks Mobile Homes placed blocking under the trailer and skirting around the undersides of the trailer. Utilities were not connected until April of 1975, when John McCall arrived.

2. See generally Schaible v. Fairbanks Medical & Surgical Clinic, Inc., 531 P.2d 1252 (Alaska 1975).

3. Existing landlord-tenant law in the United States, save as modified by statute or ju-

dicial interpretation, is a product of English common law developed within an agricultural society at a time when doctrines of promissory contract were unrecognized. Thus, the landlord-tenant relationship was viewed as a conveyance of a lease-hold estate and the covenants of the parties generally independent. These doctrines are inappropriate to modern urban conditions and inexpressive of the vital interests of

tenants previously unrecognized rights by recognizing the contractual nature of the landlord-tenant relationship.[4]

The rental agreement entered into by the parties does not specify a term; it deals primarily with the rules and regulations a tenant must follow. The agreement does provide that the rent for the trailer space is $80.00 per month. AS 34.03.020(d) of the Uniform Act provides that:

> Unless the rental agreement fixes a definite term, the tenancy shall be week to week in the case of a tenant who pays weekly rent, and in all other cases month to month.

Thus, we must evaluate appellants' several specifications of error in the context of a month-to-month tenancy.

■ As their initial specification of error, the McCalls contend that the superior court erred when it found that Fickes' institution of legal proceedings, seeking termination of the tenancy and possession of the trailer space, was instituted because Fickes did not want to continue the relationship because of the uncertainty of his dealings with the McCalls. Our review of the record leads us to conclude that this finding of fact is not clearly erroneous.[5]

■ The McCalls next contend that the superior court erred when it refused to hold that Fickes' acceptance of the late rent payments constituted waiver of his right to terminate the rental agreement. According to appellants' analysis, AS 34.-03.240 of the Uniform Act mandates a holding on our part that Fickes waived his right to terminate the rental agreement. This statute provides:

> Acceptance of rent with knowledge of a default by the tenant or acceptance of performance by the tenant that varies from the terms of the rental agreement or rules or regulations subsequently adopted by the landlord constitutes a waiver of the right of the landlord to terminate the rental agreement for that breach, unless otherwise agreed after the breach has occurred.[6]

The Fickes counter the McCalls' reliance on AS 34.03.240 by citation to other sections of the Uniform Act. AS 34.03.-290(b) and (c) provide respectively:

> The landlord or the tenant may terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice.

> If the tenant remains in possession without the landlord's consent after the expiration of the term of the rental agreement or after its termination, the

---

the parties and the public which the law must protect.

This Act recognizes the modern tendency to treat performance of certain obligations of the parties as interdependent.

Unif.Res.Landlord and Tenant Act § 1.102, comment.

4. *See, e. g.,* Clocksin, *Alaska's Summary Eviction Law—A Confused Anachronism,* 4 UCLA-Alaska L.Rev. 56, 73 (1974). Alaska case law has used a contractual analysis in some situations. *E. g., Thrift Shop, Inc. v. Alaska Mut. Sav. Bank,* 398 P.2d 657, 658–59 (Alaska 1965).

5. *Peters v. Juneau-Douglas Girl Scout Council,* 519 P.2d 826, 833 (Alaska 1974); *Ayers v. Day and Night Fuel Co.,* 451 P.2d 579, 582 (Alaska 1969).

6. The Commissioners' comments to this section read in full as follows:

If breach of a continuing duty is involved, acceptance of rent or performance will not bar the landlord's remedy for a later breach. Acceptance of unpaid rent after expiration of a termination notice does not constitute a waiver of the termination.

In the case at bar the termination notice by its own terms did not "expire" until June 20, 1975, which was after Fickes' acceptance of the June rent.

Appellants also rely extensively on *Alaska State Housing Authority v. Contento,* 432 P. 2d 117 (Alaska 1967). We find that reliance misplaced. *Contento* deals with the establishment of a month-to-month tenancy when a landlord accepts rent after the expiration of a fixed-term lease. Any waiver by the landlord in that case was of the right to immediately evict the tenants at the expiration of the lease term; the case has nothing to do with the termination of a month-to-month tenancy which is our concern in this appeal.

landlord may bring an action for possession . . . .

The Fickes also rely on AS 34.03.270, which provides that:

> If the rental agreement is terminated, the landlord may have a claim for possession and for rent and a separate claim for actual damages for breach of the rental agreement.

Because the Uniform Residential Landlord and Tenant Act does not explicitly set forth a procedure for bringing an "action for possession," Fickes contends that F.E.D. procedures may be used where they do not conflict with the Uniform Act. We are in agreement with this salutary approach and conclude that as a matter of statutory construction, the Uniform Residential Landlord and Tenant Act should be harmonized with our Forcible Entry and Detainer statutes.

The Fickes view McCalls' waiver argument as inapposite and characterize the case as one in which a landlord involved in a month-to-month tenancy simply decided to terminate that tenancy. Additionally, Fickes argues that regardless of intent a landlord has the right pursuant to AS 34.-03.290(b) and (c), previously quoted, to terminate a periodic tenancy.

■ Thus, we are faced with the question whether the provisions of AS 34.-03.240, dealing with the waiver of a landlord's right to terminate, precluded Fickes from terminating the month-to-month tenancy in the case at bar. Month-to-month tenancies are traditionally terminable at will for any reason; the entire thrust of the arrangement is to allow either party to end it on short notice without incurring

any additional liabilities. Parties who desire firm commitments for extended periods of time can bargain for longer fixed terms in order to assure continued presence on the premises. Further, the Uniform Act treats month-to-month tenancies separately from arrangements involving longer fixed terms. From this separation we think it a reasonable inference that such tenancies constitute a special class, not necessarily governed by all provisions of the Uniform Act.[7]

■ Thus, while "rental agreement" is defined in AS 34.03.360 as "all agreements . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit . . .", the term "rental agreement" is not used in the Uniform Act in connection with month-to-month tenancies. In fact, AS 34.03.020(d) fixes a month-to-month tenancy, in absence of agreement by the parties to a different term in the rental agreement, if rent is paid on a monthly basis. In such cases the landlord is specifically given the power to terminate the tenancy by sending a 30-day written notice.

■ Allowing a landlord to terminate a month-to-month tenancy, even though he was accepting late rent, on the basis that a pattern of late rent causes him to be unsure about the viability of a future relationship with his tenants, does not prevent the tenant from asserting his rights under the Act. For example, deducting partial rent to pay for heat wrongfully withheld by the landlord (*see* AS 34.03.-180) could result in attempted eviction by the landlord. In such a case, the attempted eviction would be retaliatory and would

---

7. Many provisions of the Uniform Act make sense only if viewed in the context of a long-term lease. For example, AS 34.03.160(a) allows a tenant to terminate a rental agreement on at least 20 days notice if conditions hazardous to health or safety exist on the premises. In the typical periodic tenancy in which rent is payable monthly, a tenant could terminate for any reason after giving 30 days written notice. AS 34.03.290. In a longer term tenancy, assuming no provision in the agreement to the contrary, the tenant apparently may only escape his obligations by pointing to a breach by the landlord. Likewise, the landlord is given the power to terminate a rental agreement after 20 days notice for failure to pay rent. The giving of such a power would make no sense if the tenancy was month-to-month, for again, in such cases the landlord already has the power to terminate.

fail. (AS 34.03.310) In short, we hold that AS 34.03.240 should be so interpreted that waiver of the "right to terminate" a rental agreement refers to rights which arise as a consequence of a breach, and does not concern rights of termination which exist regardless of whether or not a tenant breached a condition of the agreement. Since Fickes always had the right to terminate the agreement with the McCalls, even without cause, by giving a month's notice, he did not waive this right by accepting the late rental payment.

Appellants next contend that the superior court committed reversible error *in finding that there was no retaliatory conduct on the part of the Fickes.* Here appellants rely on AS 34.03.310 of the Uniform Act which prohibits retaliatory conduct, as defined in part, as:

(a) Except as provided in (c) and (d) of this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after the tenant has

. . . . . .

(2) endeavored to avail himself of rights and remedies granted him under the provisions of this chapter.

The McCalls argue that the plain wording of AS 34.03.310 viewed in conjunction with AS 34.03.240 (the waiver of landlord's right to terminate by acceptance of rent with knowledge of the tenant's default), indicates that instituting F.E.D. proceedings in the instant circumstances constituted retaliatory conduct.[8] We find this argument devoid of merit. The retaliatory conduct with which the statute is concerned is clearly conduct which is undertaken in retaliation for actions by the tenant. As a defense, "retaliatory eviction" is addressed to conduct which deters the assertion of tenant rights. We think it logically untenable to assert that an act which benefits the landlord is one which will result in retaliation. The acceptance of rent by Fickes under the facts of this case did not result in any legal harm or disability to Mr. Fickes nor did it arise from the assertion of the tenants' rights. We think it clear that AS 34.03.310 is designed to prevent retaliation by the landlord for tenant's conduct which might be deemed harmful to the landlord.[9]

Appellants' final specification of error is closely related to their third specification of error. Here the McCalls argue that the superior court erred in failing to hold that Fickes' conduct, in accepting the late rental payments with knowledge of the McCalls' defaults, barred resort to the institution of a Forcible Entry and Detainer action. In support of this specification of error the McCalls contend that defenses

---

8. More particularly appellants state that:
. . . When Mr. McCall tendered late payments, and when Mr. Fickes accepted those payments, a waiver as described by Statute was placed in effect. The tender of late payments and reliance on the waiver provision by Mr. McCall must be considered as a remedy under the Statute, even though such measures are not contained within the section providing tenant's remedies. The court's decision that no retaliatory conduct was present—even though Mr. Fickes' conduct was clearly prohibited by the statute—should be thus reversed on the ground that it is in violation of the clear wording of the statute alone. (nts' br. 18)

9. Thus, in *Edwards v. Habib*, 130 U.S.App. D.C. 126, 397 F.2d 687 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969) the tenant's conduct which was alleged to constitute the source for the landlord's retaliatory motivation was a reporting of city sanitary code violations to the city inspector. The court held the landlord was not " . . . free to evict in retaliation for his tenant's report of housing code violations to the authorities." 397 F.2d at 699. *See also Toms Point Apartments v. Goudzward*, 72 Misc.2d 629, 339 N.Y.S.2d 281 (1972) [tenants union].

Additionally, we note that AS 34.03.240 is not in the article of the Uniform Act which is entitled "Tenant Remedies". Rather, it is a part of the article entitled "Landlord Remedies"; rather than giving a right or remedy to the tenant, the section acts as a limitation upon the remedies of the landlord.

available under the Uniform Act must also be available in F.E.D. proceedings. Viewing the F.E.D. and the Uniform Act as totally repugnant, appellants request a ruling that the F.E.D. statutes were impliedly repealed by the legislature when it enacted the Uniform Residential Landlord and Tenant Act.

As we have indicated previously, this position must be rejected. We hold that defenses available under the Uniform Act may be asserted in F.E.D. proceedings.

If the Uniform Act's defenses were not available in F.E.D. proceedings, litigants would be faced with a situation in which the plaintiff, by choosing the statutory section under which to proceed, could limit the tenant's right to assert defenses. This would clearly defeat the Uniform Act's express purpose to ". . . simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant." [10]

The judgment entered below is affirmed.

10. AS 34.03.010(b)(1).