[No. H000857. Sixth Dist. June 29, 1987.]

LINDA MARQUEZ-LUQUE, Individually and as Special Administrator, etc., et al., Plaintiffs and Respondents, v. RAYMOND MARQUEZ, Defendant and Appellant.

## COUNSEL

Craig J. Bassett and Sullivan & Bassett for Defendant and Appellant.

Burnett, Burnett & Allen, Douglas B. Allen and Keith A. Ducote for Plaintiffs and Respondents.

## OPINION

**AGLIANO, P. J.—**

Was eviction of the defendant from his dwelling proper in a proceeding to enjoin harassment brought pursuant to Code of Civil Procedure section 527.6?[1] We hold the order of eviction was improper under the circumstances of this case.

---

[1] Code of Civil Procedure section 527.6 reads: "(a) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order, and an injunction prohibiting harassment as provided in this section.

"(b) For the purposes of this section, 'harassment' is a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses such person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substan-

Plaintiffs Linda Marquez-Luque and Augustin Luque, Jr., the sister and brother of defendant Raymond Marquez, were named executor and alternate executor, respectively, in their late father's will. Plaintiffs obtained letters of special administration with general powers of their father's estate on May 15, 1985. That same day they filed a petition for injunction, with ex parte application for a temporary restraining order, to enjoin Raymond from harassing plaintiffs and other family members. The petition alleged, inter alia, that Raymond, who had lived with the children's father, remained in possession of their father's home after the father's death, and that he had threatened to kill Linda and burn the house if she were to probate the estate and take the house from him. Plaintiffs further declared that Raymond had guns on the property, had served time in prison for violent felonies and kept illegal drugs on the premises.

Based on plaintiffs' rights as administrators to possess all property of the decedent's estate (Prob. Code, § 581) and on defendant's threats to destroy the home, plaintiffs prayed that defendant be forthwith, and without notice, removed from the home.

---

tial emotional distress to the plaintiff. 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

"(c) Upon filing a petition for an injunction under this section, the plaintiff may obtain a temporary restraining order in accordance with subdivision (a) of Section 527. A temporary restraining order may be granted with or without notice upon an affidavit which, to the satisfaction of the court, shows reasonable proof of harassment of the plaintiff by the defendant, and that great or irreparable harm would result to the plaintiff. A temporary restraining order granted under this section shall remain in effect, at the court's discretion, for a period not to exceed 15 days, unless otherwise modified or terminated by the court.

"(d) Within 15 days of the filing of the petition, a hearing shall be held on the petition for the injunction. The defendant may file a response which explains, excuses, justifies, or denies the alleged harassment or may file a cross-complaint under this section. At the hearing, the judge shall receive such testimony as is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment. An injunction issued pursuant to this section shall have a duration of not more than three years. At any time within the three months before the expiration of the injunction, the plaintiff may apply for a renewal of the injunction by filing a new petition for an injunction under this section. . . .

"(f) Upon filing of a petition for an injunction under this section, the defendant shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition. . . .

"(h) The prevailing party in any action brought under this section may be awarded court costs and attorney's fees, if any.

"(i) Any willful disobedience of any temporary restraining order or injunction granted under this section is punishable pursuant to Section 273.6 of the Penal Code.

"(j) This section does not apply to any action covered by Section 4359 or 7020 of the Civil Code, or by Chapter 4 (commencing with Section 540) of this title, or by Title 1.6C (commencing with Section 1788) of the Civil Code. Nothing in this section shall preclude a plaintiff's right to utilize other existing civil remedies. . . ."

The court issued the ex parte order as drafted by plaintiffs. In addition to prohibiting harassment, it ordered the Santa Clara County Sheriff to remove Raymond and his personal effects from the property and ordered Raymond to remain 500 yards from the home.[2]

On May 21, deputy sheriffs arrived at the Uvas Road home and served on Raymond the order to show cause and the temporary restraining order. Raymond's eviction was accomplished after the deputies searched the home for contraband, then arrested and incarcerated Raymond after discovering guns.

On May 24, a hearing was held to determine whether a permanent "harassment" injunction should issue. The evidence disclosed without conflict that Raymond had resided in the home for approximately four years; that Raymond claimed ownership of the home under an agreement with his father; and that he was the devisee of a one-sixth interest in the home under his father's will. The evidence further disclosed that Raymond had in fact threatened to burn the house were he to lose his claim to it, that fire insurance was about to expire and plaintiffs were finding it difficult to extend fire insurance on the premises because of Raymond's threat. The evidence further established that defendant had consulted an attorney to pursue his claim to the home and that defendant had filed a declaratory relief action to that end on May 20. Attached to the declaratory relief complaint was a document purporting to be the father's agreement to transfer the home to Raymond. The paper was signed and witnessed approximately one month before his father's death. Plaintiffs were served with copies of the complaint prior to the permanent injunction hearing.

The court nevertheless made the temporary order a permanent one, including the eviction order. ■■ Defendant appeals the final order of eviction. He does not otherwise challenge the harassment injunction.

### The Nature and Purpose of Section 527.6

A section 527.6 proceeding is specially provided to enjoin "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate

---

[2] The challenged portion of the order read: " TEMPORARY RESTRAINING ORDER . a. Pending the hearing, the Court ... SPECIFICALLY ORDERS THAT DEFENDANT : ... (h) ... not damage, destroy, occupy or interfere with the family residence, outbuildings, travel trailers, and furnishings at 13550 Uvas Road, Morgan Hill, California. ... The Santa Clara County Sheriff and any peace officer in the State of California is authorized and ordered to enter on the property at 13550 Uvas Road, Morgan Hill, California, and remove Raymond Marquez and his personal effects, firearms, illegal drugs and narcotics from the premises."

purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff." (Code Civ. Proc., § 527.6, subd. (b).) The prescribed remedy is a personal injunction prohibiting the harassment. (Code Civ. Proc., § 527.6, subd. (d).)

While defendant's threatening conduct may have, and did, justify a personal injunction prohibiting the conduct itself, removal from the home was not a remedy authorized by the section. The limited nature of the statutory remedy aside, there was no evidence that Raymond's mere presence in the home caused plaintiffs substantial emotional distress, or that his possession of the home was intended to harass or annoy plaintiffs.

In contrast, the Legislature has provided for summary removal of a person from his or her dwelling in order to quell or prevent domestic violence, but such provisional remedy is authorized only when the person for whose protection the order is made was actually residing with the person at whom the order is directed. (Code Civ. Proc., §§ 540-553; Civ. Code, § 4359 (marriage dissolution proceedings).) Plaintiffs here did not reside in the home with defendant.

The trial court was patently aware of its limited authority under the special proceeding to remove Raymond from the property, and therefore purported to invoke its general equity power to justify the order. The court reasoned eviction was necessary to prevent irreparable damage to the property. However, the only procedural vehicle before the court was the petition to enjoin personal harm. Protection of property is clearly not the purpose of section 527.6. Setting aside for the moment the broader question whether the court has authority in equity to order eviction, we focus instead on the obvious absence of any pending action, equitable or otherwise, which might have served as a vehicle for the questioned order.

Section 526 of the Code of Civil Procedure states that an injunction may be granted "[w]hen it appears *by the complaint* that the plaintiff is entitled to the relief demanded, ..." (Italics added.) No complaint or proceeding was then on file other than the special harassment proceeding which, as pointed out, was limited in its scope to enjoining action constituting harassment. The court therefore lacked a pending cause on which to proceed. The trial court was further constrained by considerations relating to the very nature of equitable powers. As aptly stated in *Lass* v. *Eliassen* (1928) 94 Cal.App. 175, at page 179 [270 P. 745]: "The case is not one, therefore, for the application of equitable doctrines but rather one for the construction of an act of the legislature. Rules of equity cannot be intruded in matters that are plain and fully covered by positive statute [citation]. Neither a fiction

nor a maxim may nullify a statute [citation]. Nor will a court of equity ever lend its aid to accomplish by indirection what the law or its clearly defined policy forbids to be done directly (*Jackson* v. *Torrence* [*1980*] 83 Cal. 521, 537 [23 Pac. 695])."

Here specific legal remedies were available to take possession of the estate realty. The common law provides an owner with two remedies for regaining possession from a tenant in wrongful possession: an action in ejectment or an action to quiet title. These remedies proceed in the same manner and at the same pace as other civil actions. (See Code Civ. Proc., §§ 760.010-764.070.)

In contrast to ejectment and quiet title, the unlawful detainer action, unknown to the common law and equity courts, was created to quickly restore the landlord's possession. The unlawful detainer action is purely statutory in origin. (*Markham* v. *Fralick* (1934) 2 Cal.2d 221, 226 [39 P.2d 804]; cf. *Knowles* v. *Robinson* (1963) 60 Cal.2d 620, 625 [36 Cal.Rptr.33, 387 P.2d 833].) It is a summary proceeding, entitled to precedence over most civil actions on the court calendar. (Code Civ. Proc., § 1179a.) The tenant has five days to answer the complaint and summons, rather than the usual 30 days. (Code Civ. Proc., § 1167.)

As administrators of their father's estate plaintiffs were entitled to seek possession of the decedent's property pending estate administration (Prob. Code, § 581) through any of these actions which would have been available to the decedent while alive. Alternatively, they could have tried the issue of title in probate court pursuant to Probate Code section 851.5. However, if plaintiffs desired prompt eviction, an unlawful detainer action was their remedy.

While his father was living, Raymond was at least a tenant at will because his presence in his father's home was consensual, for an indefinite period with no rental obligation. (*Jones* v. *Shay* (1875) 50 Cal. 508.) When his father died, Raymond's relationship to the estate changed—his tenancy at will terminated. (*Joy* v. *McKay* (1886) 70 Cal. 445, 446 [11 P. 763].) He was then a tenant at sufferance. As such, he was not entitled to a 30-day presuit notice to quit before plaintiffs could bring an action in ejectment. (*Ibid.*) Nor was he entitled to a three-day notice before the filing of an unlawful detainer complaint. (*Ryland* v. *Appelbaum* (1924) 70 Cal.App. 268, 270 [233 P. 356].) He was, however, entitled to proper service of a summons and complaint and an opportunity to answer *prior to* issuance of the eviction order. ■ The procedural safeguards inherent in other civil actions apply with equal force to unlawful detainer actions. (Code Civ. Proc., § 1177.) Unless the tenant has been properly served, the court lacks jurisdiction to evict. (Code Civ. Proc., §§ 413.10-417.40.) Raymond's presence at the

hearing to enjoin harassment did not cure the jurisdictional defect. Finally, the action being one at law, the defendant in an unlawful detainer action is entitled to a jury trial. (See *Maldonado* v. *Superior Court* (1984) 162 Cal.App.3d 1259, 1263 [209 Cal.Rptr. 199]; Code Civ. Proc., § 592.)

■ In conclusion, the special proceeding under Code of Civil Procedure section 527.6 to enjoin harassment did not invest the court with authority to evict defendant from his dwelling. Nor did the court have equitable jurisdiction to achieve that result.

The order is reversed. Defendant is entitled to costs on appeal. (Cal. Rules of Court, rule 26.) Defendant is also entitled to other costs and reasonable attorney's fees to be determined by the trial court. (Code Civ. Proc., § 527.6, subd. (h).)

Brauer, J., and Capaccioli, J., concurred.

A petition for a rehearing was denied July 20, 1987, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied September 16, 1987.