[No. D010213. Fourth Dist., Div. One. Nov. 13, 1990.]

LINDA KAYE RAYAN, Plaintiff and Appellant, v.
CLAUDE DYKEMAN, Defendant and Respondent.

**COUNSEL**

Robert F. Gusky for Plaintiff and Appellant.

Jones, Hatfield, Penfield, Barden & Finegold, James W. Barden and Susan H. Lovenworth for Defendant and Respondent.

**OPINION**

**TODD, J.**—Linda Kaye Rayan appeals an order of March 13, 1989, appointing elisors to execute a deed to residential real property from her to Claude Dykeman. Rayan also appeals orders of May 11, 1989, denying her second motion to declare null and void a May 24, 1988, order that she transfer the property to Dykeman, denying her motion to set aside the order appointing elisors, appointing elisors to release a lis pendens and imposing sanctions in the amount of $2,500. The orders derive from Rayan's January 19, 1988, stipulation in open court and a conforming order of May 24, 1988, made in a proceeding Rayan initiated under the Domestic Violence Prevention Act (Code Civ. Proc.,[1] § 540 et seq. (Act)), that she would execute a quitclaim deed to the property transferring title to Dykeman effective June 1, 1988.

Finding no merit in Rayan's arguments that the court was without authority to make and enforce such an order in proceedings under the Act and that it otherwise abused its discretion, we affirm.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

FACTS

In 1986 Rayan and Dykeman, as joint tenants, took title to residential real property at 852 Oleander Place, Escondido, California. On January 4, 1988, Rayan filed an order to show cause and temporary restraining order under the Act and obtained an order removing Dykeman from the residence. Dykeman obtained an ex parte order concerning his personal property in the residence and restraining Rayan from contacting him at his residence or employment, and the order to show cause hearing was scheduled for January 19, 1988.

At the hearing on January 19, 1988, Rayan and Dykeman, by their respective counsel, entered into a "full stipulation" which Dykeman's attorney read into the record. The stipulation began: "With respect to the real property located at 852 Oleander Place in Escondido, California, we have agreed as follows:

"That the plaintiff will forthwith execute a quitclaim deed to that property transferring title to that property to Mr. Dykeman; that the actual transfer and recordation of that deed however will not take place until June 1, 1988 because of the bankruptcy that the plaintiff is filing. In that bankruptcy, she will claim a homestead exemption on said property in return for which she'll have the temporary use and possession of the real property until June 1, 1988 provided that she makes all house payments . . . ."

The stipulation went on to provide for Rayan's removal by order of the court if she did not make the payments and it further read, in part, "[t]hat would also apply with respect to the termination of use date on June 1, 1988, that if the plaintiff was not moved by that time, that a removal order would issue for the marshal to remove her from the residence . . . ." The stipulation with respect to the residence concluded with Rayan agreeing "that during the time she is in the residence, she will care [sic] and maintain it and will allow no damage to be done to the residence."

After the stipulation was read into the record, Rayan's counsel asked her if she heard and understood the stipulation read by counsel and whether she agreed to abide by it. To each question she answered, "Yes." Similarly, Dykeman put his assent on the record. The court then approved the stipulation as recited by counsel and ordered it to be incorporated in any judgment that may be entered in the matter. On May 24, 1988, after both Rayan and Dykeman had substituted in new counsel, the court signed and filed an order after hearing incorporating the terms of the stipulation.

On May 31, 1988, the court denied Rayan's order to show cause motion to set aside the May 24 order after hearing. The court found no excusable

neglect, insufficient evidence of fraud and no legal justification to set aside the order.

In the meantime, on January 22, 1988, Rayan filed a petition in bankruptcy which listed Dykeman among the unsecured creditors along with a notation reading, "No liability admitted [¶] Listed for information only," and a sum of "0.00" as the amount of Dykeman's claim. The petition listed a joint tenancy interest in the residence worth $120,000 as Rayan's real property. The petition included a copy of a declaration of homestead on the residence and it claimed the residence as exempt property. (§ 704.910 et seq.) On May 27, 1988, Rayan's debts were discharged in the bankruptcy proceeding. Notice of the discharge was sent to Dykeman..

On September 23, 1988, Rayan substituted herself, in propria persona, in place of her former counsel.

Rayan refused to sign a deed transferring her interest in the residence to Dykeman and on March 13, 1989, Dykeman obtained an ex parte order appointing alternate elisors for the purpose of signing Rayan's name to all documents necessary to transfer her interest in the residence to Dykeman.

On March 27, 1989, Rayan filed a lis pendens. On April 25, 1989, Rayan filed an order to show cause seeking to set aside the order appointing elisors and to declare null and void the May 24, 1988, order that she transfer her interest in the residence to Dykeman. Rayan substituted in her present counsel who argued the matter at a hearing on May 11, 1989. The court denied Rayan's motions to set aside the order appointing elisors and to declare the 1988 order null and void, observing in part, "the real motion in this case has been heard and decided . . . there was a stipulation on the record, and I see no reason that that stipulation was not binding. That's the reason for sanctions." The court imposed the $2,500 sanctions and ordered an elisor appointed to release the lis pendens if Rayan did not sign the documents by May 15.

## DISCUSSION

Rayan presents two basic theories in her appeal of the various orders. First, she argues that in proceedings under the Act only certain remedies are specified and those do not include the remedies invoked in this case, i.e., an order transferring title to real estate and an order enforcing the first order by appointment of an elisor. Thus, she concludes the court had no authority in these proceedings under the Act to permanently affect ownership of the parties' real property. Second, she argues her discharge in

bankruptcy caused the order and her agreement to transfer the property to be null and void. Separately Rayan asserts error in the sanctions order.

## I

 Concerning Rayan's first theory, it is true the Act does not provide a remedy involving permanent transfer of real property from one party to the other. Section 547 sets forth certain orders the court may make under the Act and includes a specific reference to Civil Code section 4359, subdivision (a)(5), which permits a court to issue ex parte orders "determining the *temporary* use, possession, and control of real or personal property of the parties and the payment of any liens or encumbrances coming due during the pendency of the order." (Italics added.) In addition, section 549 provides that the "remedies provided in this [Act] shall be in addition to any other remedies, either civil or criminal, which may be available to plaintiff."

In light of the nonexclusive remedies provision of section 549 in the Act and the clear stipulation, which Rayan personally informed the court she heard, understood and agreed to abide by, there is no question the court was authorized to enter the order of transfer carrying out the stipulation. Section 664.6 states, "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." Under section 664.6 and within the purposes of the Act "to prevent the recurrence of acts of violence . . . and to provide for a separation of the persons involved in such domestic violence for a period of time sufficient to enable such persons to seek resolution of the causes of the violence," (§ 540) the court possessed ample authority to accept the stipulation and enter the order having the effect of a judgment effectuating the stipulation. (See *California State Auto Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664 [268 Cal.Rptr. 284, 788 P.2d 1156].)

Here, Rayan had invoked the jurisdiction of the superior court, a court of general jurisdiction. (Cal. Const., art. VI, § 10.) She had submitted herself to the court's jurisdiction and knowingly entered the stipulation. The order was made within the jurisdictional time frame of the Act (see § 548 generally fixing a three-year duration for restraining orders) and dealt in part with Rayan's temporary possession of the residence and payments on the mortgage, both matters expressly authorized to be subjects of the court's orders under the Act. (§ 547, subd. (a); Civ. Code § 4359, subd. (a)(5).) Moreover, considering that the domestic violence in the case occurred inside the very residence stipulated and ordered transferred, the order was in aid of preventing recurrence of the violence and separating the parties, the Act's purposes.

Rayan's reliance on *Marquez-Luque* v. *Marquez* (1987) 192 Cal.App.3d 1513 [238 Cal.Rptr. 172] is misplaced. That case involved imposition of an eviction remedy not provided for in the section 527.6 proceeding to enjoin harassment there involved. The reviewing court held the use of the eviction remedy was unauthorized. However, the parties had not entered into any stipulation concerning the remedy of eviction. As we have discussed, the stipulation here distinguishes this case from *Marquez-Luque*.

We conclude the court was authorized to enter the order to transfer title to the residence pursuant to the stipulation in these proceedings under the Act.

■ ▬ ▬ ■ ▬ As to the appointment of the elisor,[2] to compel obedience to its orders the court is authorized to make such an appointment. (§ 128, subd. (4); *Security T. & S. Bk.* v. *S. P. R. R. Co.* (1935) 6 Cal.App.2d 585, 588-589 [45 P.2d 268].)

## II

■ Rayan contends the court erred in not declaring null and void, as discharged in bankruptcy, its May 24, 1988, order after hearing incorporating the stipulation and requiring Rayan to transfer title to the residence to Dykeman. Although Rayan acknowledges the May 27, 1988, bankruptcy discharge order was a discharge of her debts, she also claims the order had the effect of declaring null and void and prohibiting enforcement of her stipulation and the order that she transfer her real property interest to Dykeman. Rayan states the "effect of the discharge in bankruptcy was to null and void *any liability* [Rayan] had to [Dykeman] regarding the January 19, 1988 executory agreement and make null and void any order of this court that would specifically enforce said agreement." (Italics added.) In short, without citation to any authority, Rayan equates her obligation to transfer title under the stipulation and order with a "debt."

As defined in *Ohio* v. *Kovacs* (1985) 469 U.S. 274, 278 [83 L.Ed.2d 649, 655, 105 S.Ct. 705], a "debt" for bankruptcy purposes is a liability on a "claim." A claim is defined as follows: "(4) 'claim' means—

---

[2] The use of the term elisor may be technically inaccurate to describe the persons appointed to execute deeds for recalcitrant litigants who refuse to obey orders of the court. (See § 262.8 denominating as an elisor one who executes process only under certain circumstances having to do with the sheriff or coroner being a party.) We recognize, however, that in common legal parlance the term elisor is used to designate persons appointed to perform functions such as the deed and document execution which is involved in this case.

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

"(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." (11 U.S.C.A. § 101(4).)

Thus, a right to payment is involved in the determination of whether there is a debt, a liability on a claim, which has been discharged in bankruptcy. Here, the order requiring a conveyance does not involve a right to payment. (Cf. *Ohio* v. *Kovacs, supra,* 469 U.S. 274, 278-283 [83 L.Ed.2d at pp. 655-658], holding an injunctive order that is reduced to a monetary obligation is a debt dischargeable in bankruptcy.) It is noteworthy that Rayan's bankruptcy listing of Dykeman as an unsecured creditor with "[n]o liability admitted," made after she entered the stipulation but before the order in question, casts doubt on whether she believed she had any debt or obligation to Dykeman.

There was no error in the trial court's refusal to declare its order of transfer null and void as a result of the bankruptcy.

### III

■ Rayan contends the court erred in ordering sanctions against her. She points out the trial court initially said her "argument is entitled to considerable consideration" and that it believed when the Legislature first considered the matter of domestic violence it had her "scheme in mind." She acknowledges, however, the court's stated basis for imposing sanctions was that the present motion being heard May 11, 1989, had been heard and decided adversely to Rayan on May 31, 1988, there was no reason for holding the stipulation not to be binding and "[t]hat's the reason for sanctions. You can drag the case on forever, but the consequence of doing so is that one party pays the fees of the other. It's inappropriate."

Considering Rayan's recalcitrance in complying with the stipulation and order for a period of nearly one year after the denial of her first motion to vacate, we find no error in the court's order imposing sanctions. (See *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 123-125 [260 Cal.Rptr. 369].)

## DISPOSITION

Orders affirmed.

Kremer, P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 1991.