**Jack VINSON, Petitioner,**

v.

**Robert J. HAMILTON, Respondent.**

No. S–4857.

Supreme Court of Alaska.

June 11, 1993.

Rehearing Denied July 23, 1993.

**734**

Barbara J. Hood and Carol Daniel, Alaska Legal Services Corp., and Richard F. Illgen, Preston Thorgrimson Shidler Gates & Ellis, Anchorage, for petitioner.

Albert Maffei, Anchorage, for respondent.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

### I. INTRODUCTION

Jack Vinson appeals a decision of the superior court affirming the district court's judgment against him in a proceeding for forcible entry and detainer. Vinson's landlord, Robert J. Hamilton, instituted the action after terminating Vinson's month-to-month tenancy. Vinson challenges the denial of both his motion for a continuance and his request for a jury trial. We reverse the denial of the continuance, and affirm the denial of a jury trial.

### II. FACTS AND PROCEEDINGS

In December 1989 Vinson rented a house from Hamilton under an oral month-to-month agreement. When Vinson moved into the house, it was in significant disrepair. Vinson performed some of the needed repairs in exchange for rent credit. Vinson was willing to do more extensive repairs on the house, but in return for his labor he wanted a one-year lease plus rent credit. Vinson claims that Hamilton agreed to this arrangement. Hamilton denies it. Based upon Vinson's understanding of this oral agreement, he continued his repair work, i.e. replacing a broken living room window, clearing out the cluttered yard, and painting the exterior of the house.

By September 1990 the relationship between Vinson and Hamilton had deteriorated. Although Hamilton gave a rent credit for the repairs made, he now disputed the accuracy of Vinson's bill for repair work. Soon afterwards, Vinson received a 30-day notice to quit, which terminated the month-to-month tenancy as of November 1.[1] Vinson received a summons and complaint for forcible entry and detainer on November 7.

The forcible entry and detainer (hereinafter FED) hearing took place on November 14 in the district court. Vinson appeared *pro se* but submitted a written motion for a 30-day continuance.[2] In the motion, Vinson raised several counterclaims—including retaliatory eviction and breach of a one-year lease—and offered to post an undertaking as required under Alaska Civil Rule 85.[3] Vinson also made an oral request for a jury trial. Judge Wolverton denied Vinson's motion for a continuance, concluding that the counterclaims related solely to damage claims and not to the issue of possession. Then, after holding a hearing, and listening to the arguments advanced by both sides, Judge Wolverton found that a month-to-month tenancy existed, that Vinson had received proper notice of its termination, and that he had to vacate the premises by November 24. Vinson appeal-

---

1. Either a landlord or a tenant may terminate a month-to-month lease by delivering to the other a written notice at least 30 days before the rental due date listed in the notice. AS 34.03.-290(b).

2. This motion was a "form" document, which Alaska Legal Services Corporation (ALSC) had tailored to his case.

3. In an FED action, the court can grant no continuance longer than two days unless the defendant movant "give[s] an undertaking to the adverse party, with sureties approved by the court, conditioned to the payment of the rent that may accrue if judgment is rendered against the defendant." Alaska R.Civ.P. 85(a)(3); *see also* AS 09.45.120. Vinson offered to post an undertaking of $150—his $300 monthly rent, less $150, the amount of one month's rent credit.

ed the district court decision to the superior court.

On October 7, 1991, the superior court affirmed that decision because it concluded that Judge Wolverton had not abused his discretion. Judge Johnstone further commented that because Vinson's motion contained matters inapplicable to the FED proceedings, Judge Wolverton could have decided that it was not filed in good faith. Judge Johnstone also held that Vinson was not entitled to a jury trial, on the ground that an action for possession does not involve an amount in controversy in excess of $250. We reverse in part, and affirm in part.

## III. DISCUSSION

### A. *Vinson's Motion for a Continuance*

Vinson argues that the district court erred in concluding that Vinson's defenses were unrelated to the issue of possession. Vinson also argues that the court abused its discretion in denying his motion, because he had no time to obtain counsel, prepare his defenses, or perform discovery.

█ When a tenant occupies a property after the termination of his lease, in defiance of a notice to quit, the landlord may institute an FED action to regain possession. *See* AS 09.45.070, .090. This action is summary in nature, and traditionally the court will recognize almost no affirmative defense or counterclaim. *See McCall v. Fickes*, 556 P.2d 535, 537 (Alaska 1976). The sole issue to address is that of possession. *See McDowell v. Lenarduzzi*, 546 P.2d 1315, 1317–18 (Alaska 1976).

In Alaska, statutory provisions assure quick FED procedures, permitting only a

few days to pass between service of process and the hearing itself.[4] Accordingly, a judge cannot grant a continuance of more than two days, unless the defendant who moves for one provides an undertaking equal to the rent that will accrue during the proceedings. Alaska R.Civ.P. 85(a)(3); *see also* AS 09.45.120. Furthermore, under Alaska's version of the Uniform Residential Landlord and Tenant Act (hereinafter URLTA), the party seeking a continuance must also show good cause.[5] A grant or denial of a continuance shall be overturned only if the trial court abused its discretion. *Siggelkow v. Siggelkow*, 643 P.2d 985, 986 (Alaska 1982). This court has found an abuse of discretion when the trial court's ruling either substantially prejudices a party or denies the party a substantial right. *Id.* at 986–87.

█ In an FED hearing, a tenant does not show good cause for a continuance if the need for one arose from his own delays or lack of diligence. *See Taylor v. Gill St. Invs.*, 743 P.2d 345, 349 (Alaska 1987).[6] On the other hand, where a party's original counsel had withdrawn on the eve of trial, and the party had made a diligent effort to obtain new counsel, we overturned the trial court's denial of a continuance. *Barrett v. Gagnon*, 516 P.2d 1202, 1203 (Alaska 1973). Therefore, good cause exists to grant a continuance when to do otherwise would hinder a party's ability to prepare her case in good faith.

█ Citing *McCall*, Hamilton argues that Vinson did not show good cause. In *McCall*, we held that because month-to-month tenancies, unlike longer fixed-term leases, were terminable at will for any rea-

---

4. Under Alaska Civil Rule 85(a)(2), "[s]ummons shall be served not less than two days before the day of trial. The date set for trial shall be not more than 15 days from the date of filing of the complaint unless otherwise ordered by the court."

Alaska's version of the Uniform Residential Landlord and Tenant Act states that "[i]n an action for possession under this chapter, the summons and complaint shall be served under the provisions of [Civil] Rule No. 85." AS 34.-03.285.

5. According to the URLTA, "A continuance may not be granted plaintiff or defendant except for good cause shown." AS 34.03.285. Whereas Civil Rule 85(a)(3) expressly applies only to the defendant movant, AS 34.03.285, by contrast, applies to either party.

6. In *Taylor*, the tenant had already received two continuances, due to the withdrawal of his attorney from the case, but did not use due diligence to find himself new counsel. We held that the court properly denied the tenant additional time, and that no abuse of discretion occurred. *Taylor*, 743 P.2d at 349.

son, not all provisions of the URLTA applied to them. *Id.* at 539. Hamilton reads this opinion to mean that termination of a month-to-month tenancy is automatic, and that a tenant can raise no meaningful defenses. Accordingly, Hamilton finds no good cause for a continuance.

Although *McCall* may deprive month-to-month tenants of *some* defenses,[7] it does not eliminate *all* of them. In fact, we expressly made only *one* defense unavailable to a month-to-month tenant: that of the landlord's waiver through acceptance of late rent. *McCall*, 556 P.2d at 540. In comparison, in *any* action for possession, a tenant may raise the defense that the landlord has terminated the lease in retaliation for the tenant's assertion of his rights under the law or under the rental agreement. AS 34.03.310(a), (b). Even month-to-month tenants may raise a defense of retaliatory eviction. *McCall*, 556 P.2d at 539–40; *see also Edwards v. Habib*, 397 F.2d 687 (D.C.Cir.1968), *cert. denied*, 393 U.S. 1016 (1969); *Barela v. Superior Court*, 30 Cal.3d 244, 178 Cal.Rptr. 618, 636 P.2d 582 (1981). Otherwise, these tenants would not assert their rights under their leases and under the law, rightfully fearful that landlords would evict them in consequence. Such a result would frustrate public policy. *See, e.g., Edwards*, 397 F.2d at 699–702; *Barela*, 636 P.2d at 586–87.

■ In this case, Vinson's motion for a continuance stated two valid defenses to an action for possession: retaliatory eviction and the existence of an oral one-year lease. The issue of the one-year lease, of course, goes to the heart of the question of possession. Moreover, Vinson adequately stated a claim for retaliatory eviction by arguing that he received eviction notices soon after Hamilton challenged Vinson's bill for re-

pairs performed. Vinson indicated his willingness to post an undertaking as Civil Rule 85 requires. Finally, there is no indication that Vinson did not act diligently in his efforts to obtain the assistance of counsel and prepare himself for trial. Therefore, Vinson has shown good cause for a continuance, and the district court abused its discretion in denying him one.[8]

**B. *Vinson's Right to a Jury Trial***

Vinson also argues that Judge Wolverton improperly denied him a trial by jury. In particular, Vinson challenges the superior court's conclusion that because Hamilton's claim was not one for rent, there was no amount in controversy and thus no right to a jury trial.

■ In Alaska, the right to a jury in civil cases "is preserved to the same extent as it existed at common law," in suits where the amount in controversy is more than $250. Alaska Const. art. I, § 16. If a party seeks only equitable relief, then there is no right to a jury trial. *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 423–24 (Alaska 1982) (denying a jury trial where the plaintiff sought only restitution and injunctive relief, rather than damages at law).

■ To support his argument, Vinson cites to *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). In this case, the U.S. Supreme Court, interpreting the Seventh Amendment,[9] found that a right to a jury trial attached to FED hearings in the District of Columbia. *Id.* However, we are not bound to the *Pernell* decision, because the Seventh Amendment of the U.S. Constitution does not apply to state court proceedings. *E.g., Minneapolis & St. Louis R.R. v. Bombolis*, 241 U.S. 211, 217, 36 S.Ct.

---

**7.** For example, some defenses, such as breach of the landlord's promise to repair, arise when the possessory dispute involves nonpayment of rent, rather than termination of the lease. Where termination is the only issue, to prohibit month-to-month tenants from raising these defenses would be more logical. *See* AS 34.03.190.

**8.** Vinson also argues that by denying him a continuance, despite his willingness to post an undertaking, Judge Wolverton denied him the

opportunity to conduct discovery, and denied him due process of law. Because we find that Judge Wolverton abused his discretion by denying Vinson a continuance, we need not decide these other issues.

**9.** The Seventh Amendment assures a right to a jury trial "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII.

595, 60 L.Ed. 961 (1916); *Bringe v. Collins*, 274 Md. 338, 335 A.2d 670, 673 (1975), *application for stay denied*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 475 (1975).

■ We decline to follow *Pernell*. *Pernell* holds that despite being a creature of statute, an FED action is still one at law, similar to a common-law ejectment action. 416 U.S. at 374–75, 94 S.Ct. at 1729–30. On the other hand, many actions for possession of real property, such as an action to quiet title or one seeking a prescriptive easement, are equitable in nature and thus demand no jury trial. *See, e.g., McGill v. Wahl*, 839 P.2d 393, 396 (Alaska 1992) (denying jury trial in prescriptive easement case); *cf. Elbing v. Hastings*, 3 Alaska 125 (D.Alaska 1906) (in suit to quiet title, disallowing defendants' characterization of action as one for ejectment, and thus denying them a jury trial). In *McGill* we suggested that whether a jury trial right existed was dependent not on whether the plaintiff or the defendant was in possession, but whether a claim for damages as distinct from an order adjudicating ownership or user rights was sought:

> We reject the suggestion that whether the plaintiff is in possession of the disputed property at the time of the filing of the claim ... is determinative of the question of whether the claim is treated as a legal or equitable one....
>
> Our rule prevents the awkward situation where a party who takes the aggressive stance of seizing possession of disputed property is awarded the right to a jury trial.... We choose not to adopt a policy which encourages unilateral self-help and confrontational behavior.

839 P.2d at 396–97.

Furthermore, FED statutes do not call for an imitation of common law ejectment proceedings. At common law, if a tenant violated the terms of his lease, or if he retained possession after the lease terminated, an action for ejectment was the landlord's only judicial remedy. *Lindsey v.*

*Normet*, 405 U.S. 56, 71, 92 S.Ct. 862, 873, 31 L.Ed.2d 36 (1972); Robert S. Schoshinski, *American Law of Landlord and Tenant* § 6:10 (1980). This action was one at law, and traditionally parties had a right to a civil jury trial. *Pernell*, 416 U.S. at 373–74, 94 S.Ct. at 1728–29. However, ejectment was also a rather slow and complex procedure, and many landlords were reluctant to rely on it. Instead, they would often evict their tenants by means of self-help, a method that was allowed under the common law but frequently led to violence. To avoid bloodshed, state legislatures of the nineteenth century forbade self-help as a remedy, but also created summary proceedings in order to speed resolution of possessory issues. *Lindsey*, 405 U.S. at 71–72, 92 S.Ct. at 873; R. Schoshinski, *supra*, § 6:10.

When interpreting Alaska's FED statute, we must take care to preserve the swift proceedings that the legislature intended. Alaska's FED provisions forbid the use of forcible self-help to regain possession of property. AS 09.45.060. At the same time, they require a summary hearing on the question of possession alone. AS 09.-45.070, .120; *see McDowell*, 546 P.2d at 1317–18; Alaska R.Civ.P. 85. Claims for damages normally are not heard, because they can be raised in regular proceedings at law. *See Lindsey*, 405 U.S. at 66–69, 92 S.Ct. at 870–72; *cf. McDowell*, 546 P.2d at 1318 ("A claim for rent is secondary and incidental to a determination of the right to possession."). This bifurcation of possessory issues from claims for damages indicates that an award of possession is distinct from a remedy at law. Therefore, we hold that in an FED hearing, an award of possession constitutes equitable relief.[10] Consequently, the parties in an FED hearing do not have a right to a jury trial.

■ Although the URLTA allows a tenant in certain FED actions to raise counterclaims seeking money damages, *see* AS 34.-03.190(a), this fact does not affect our deci-

---

**10.** Needless to say, when the relief afforded is equitable in nature, no amount of money damages is in controversy. Therefore, Judge Johnstone properly determined that Vinson's claim

did not meet the Alaska Constitution's amount in controversy requirement. *See* Alaska Const. art. I, § 16.

sion. First, counterclaims may be raised only if the action involves nonpayment of rent. *Id.* In Vinson's case, nonpayment of rent is not a direct issue. Second, even if such a counterclaim were involved here, the central issue of the case is still possession, for possession, not money damages, is what the landlord seeks, and a tenant has the alternative of pursuing her counterclaims in a separate judicial proceeding.[11] Finally, most FED cases will not involve counterclaims, and will concern possession alone. *See Lindsey,* 405 U.S. at 65–66, 92 S.Ct. at 869–71.

Here, the only issue to be resolved was who could rightfully possess the property, Vinson or Hamilton. The only relief Hamilton sought at the FED hearing was a court order to evict Vinson and allow Hamilton to repossess the house. Therefore, the remedy that Hamilton sought was equitable in nature, and Vinson had no right to a jury trial.[12]

## IV. CONCLUSION

On the question of whether the denial of Vinson's motion for a continuance constituted an abuse of discretion, we REVERSE the decision of the superior court, and remand the case to the district court for further proceedings consistent with this opinion. On the question of whether Vinson has a right to a jury trial, we AFFIRM the decision of the superior court.

RABINOWITZ, Justice, with whom COMPTON, J., joins, concurring in part and dissenting in part.

I agree that the district court abused its discretion in denying Vinson's motion for a continuance. I dissent, however, from the court's holding denying Vinson's right to a jury trial.

Our decision in *McGill v. Wahl,* 839 P.2d 393 (Alaska 1992), illustrates the appropriate right-to-jury-trial analysis under the Alaska Constitution:

The Alaska Constitution preserves a jury trial only for those causes of action which are legal, and not equitable in nature. A claim for a prescriptive easement, like a claim for adverse possession, is in the nature of an equitable claim and was historically tried in the courts of equity. We hold that the McGills were not entitled to a jury trial as a matter of right.

*Id.* at 396 (citations omitted). The court's opinion departs from this relatively straightforward historical analysis. The court states the controlling rule: "If a party seeks only equitable relief, then there is no right to a jury trial." Yet, I am of the view that application of this test yields only one possible conclusion: a right to a jury trial exists in Forcible Entry and Detainer (FED) actions.

### I

In *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), the United States Supreme Court applied a test identical to Alaska's historical approach in deciding that litigants have a Seventh Amendment right to a jury trial in District of Columbia FED actions. *Id.* at 384–85, 94 S.Ct. at 1733–34. As the court notes, *Pernell* rested its holding on the historical fact that "an FED action is ... one at law, similar to a common-law ejectment action." Op. at 737. *Pernell* reached this result because the FED action served the "same essential function" as its historical predecessor: the action at law for ejectment.

*Pernell* does not bind us in interpreting the Alaska Constitution. Yet, *Pernell's* reasoning accords with our own prior characterization of the FED action. We have stated that the Alaska FED proceeding is a direct substitute for the landlord's common law right to remove a tenant by self-help: "A suit for forcible detainer under Alaska statutes substitutes the authority of the courts for private force to compel a citizen

---

11. Notably, AS 34.03.190(a) does not *require* tenants to pursue counterclaims by way of an FED hearing.

12. The parties also dispute whether Vinson's oral request for a jury at the FED hearing was proper under Alaska Civil Rule 38. Because no right to a jury trial exists here, we decline to address this question.

wrongfully in possession of real property to surrender it to another with a superior claim." *Modrok v. Marshall,* 523 P.2d 172, 174 (Alaska 1974). In creating the FED action, the Alaska Legislature staked a middle ground between two common law rights: ejectment and self-help. The resulting FED action, then, has legal, not equitable, ancestry. As such, the FED action inherited not merely the "same essential function" of the action for ejectment, but also the historical constitutional right to a jury trial of all actions at law. The majority of state courts to address the issue reach the same conclusion. *See Marquez–Luque v. Marquez,* 192 Cal.App.3d 1513, 238 Cal.Rptr. 172 (App.), *modified* 193 Cal.App.3d 1093 (App.1987); *Hopkins v. Justice of the Peace Court No. 1,* 342 A.2d 243 (Del.Super.1975); *Hill v. Levenson,* 259 Ga. 395, 383 S.E.2d 110 (1989); *North Sch. Congregate Housing v. Merrithew,* 558 A.2d 1189 (Me.1989); *Carroll v. Housing Opportunities Comm'n,* 306 Md. 515, 510 A.2d 540 (1986); *Reiter v. Reiter,* 240 Mont. 450, 784 P.2d 917 (1990); *Martin v. Rogers,* 42 Ohio App.3d 110, 536 N.E.2d 665 (1987); *Criss v. Salvation Army Residences,* 173 W.Va. 634, 319 S.E.2d 403 (1984). *But see Lum v. Sun,* 70 Haw. 288, 769 P.2d 1091 (1989); *Alfour Inc. v. Lightfoot,* 123 N.J.Super. 1, 301 A.2d 197 (1973).

## II

The court "decline[s] to follow *Pernell.*" This statement has significant consequences for the continued vitality of the present right-to-jury-trial analysis in Alaska. *Pernell* was based on an assertion of historical fact. As noted above, the historic common law predecessor to the FED action—the action for ejectment—was an action at law triable to a jury. Conse-

quently, *Pernell* concluded that: "The proceeding established by [the FED statute], while a far cry in detail from the common-law action of ejectment, serves the *same essential function*—to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Pernell,* 416 U.S. at 375, 94 S.Ct. at 1729. *Pernell,* then, took care to distinguish between the "details" and the "essential function" of an action. Our decisions have applied a similar test, asking whether the claim asserted is legal or equitable "in nature" rather than "in detail." [1] In doing so, both the United States Supreme Court and this court refined the historical law-equity test to allow for growth in the law and, thus, to guarantee a jury trial for all nascent actions that are "in nature"—i.e., serve "the same essential function" as—an action at law.

The court's analysis focuses on the procedural differences between an FED action and an action for ejectment. In doing so, the court bases its comparison on the "details" of the two actions and not on their "essential functions." Indeed, the court concedes that the historical action for ejectment was an action at law for which a jury trial was available. Moreover, the court does not dispute that the FED action performs the "same essential function" as an action for ejectment. Yet, the court concludes that a jury trial is not required. Thus, since the court declines to follow *Pernell,* it must also decline to follow the "same essential function" test. In doing so, it also abandons our own test based on the "nature" of the asserted claim.

It appears to me that the court is applying a bright line test: the right to a jury trial attaches only to those claims seeking money damages.[2] The court suggests such

---

1. *See Keltner v. Curtis,* 695 P.2d 1076, 1079 & n. 5 (Alaska 1985) ("a party to a proceeding adjudicating ownership of personal property should be entitled to a jury trial."); *State v. First Nat'l Bank of Anchorage,* 660 P.2d 406, 423–24 (Alaska 1982) (no right to a jury trial because litigant sought only equitable relief of restitution or injunction).

2. The court concedes, as it must, that a tenant can bring a counterclaim for money damages in

a state FED action. Op. at 737–38; *see* AS 34.03.190(a). The court also notes that such a counterclaim was not brought in this case. Op. at 737–38. The court, however, adds that "even if such a counterclaim were involved here, the central issue of the case is still possession, for possession, not money damages, is what the landlord seeks, and a tenant has the alternative of pursuing her counterclaims in a separate judicial proceeding." Op. at 737–38. This reasoning casts significant doubt upon our prior

a rule in its opinion. *See* Op. at 737. In support of this rule, the court recharacterizes some of our past cases to fit this model. The court's treatment of *McGill v. Wahl*, 839 P.2d 393 (Alaska 1992), exemplifies its recharacterization of our case law in this area.[3]

The court also indicates that it was drawn in making its decision by the pull of legislative policy: "When interpreting Alaska's FED statute, we must take care to preserve the swift proceedings that the legislature intended." Op. at 737–38. This rationale is unpersuasive for two reasons. First, regardless of the legislature's intent, the Alaska Constitution is the source of the right to a jury trial. The Alaska Legislature cannot abrogate the right to a jury trial merely by streamlining existing actions at law. Second, if the court is concerned that tenants will request a jury trial merely to forestall inevitable eviction, the procedural mechanism of summary judgment can dispose of cases with no genuine issues of material fact.[4] *Pernell*, 416 U.S. at 384, 94 S.Ct. at 1734. The West Virginia Supreme Court of Appeals stated the point as follows:

> there may be some concern that if all tenants assert their right to a jury trial under this statute the purpose of the statute, i.e., to provide the landlord with a quick procedure to remove a hold-over tenant, will be thwarted. We do not think this is likely; although we hold that there is a right to a jury trial under

decision in *Shope v. Sims*, 658 P.2d 1336 (Alaska 1983), in which we adopted the rule that "when a case involves both legal and equitable claims, the facts common to such claims must be tried to a jury if a proper demand is made." *Id.* at 1340. *Shope* does not allow us to characterize an entire case based on a "central issue" or "dominant essence" test. Rather, the common issues of fact must be submitted to a jury.

3. The court states that in *McGill* "we suggested that whether a jury trial right existed was dependent not on whether the plaintiff or the defendant was in possession, but *whether a claim for damages* as distinct from an order adjudicating ownership or user rights was sought." Op. at 737 (emphasis added). Our decision in that case was based on neither ground. Instead, we first noted that plaintiff's complaint alleged a prescriptive easement. *McGill*, 839 P.2d at 396. Next, we reasoned that

the expedited procedures, that right is not unlimited and in certain cases it would be fruitless to assert it. Certainly all of the rules that apply to summary judgments in other jury trial contests apply with equal force.[5]

*Criss*, 319 S.E.2d at 407 (citations omitted). Or, a landlord could anticipate such problems by including a waiver-of-jury-trial provision in the lease.

### III

On the basis of the foregoing I believe that under our current test Vinson is entitled to a jury trial because the FED action is "in nature" a common law action of ejectment. Therefore I dissent from the court's holding that Vinson is not entitled to a trial by jury.

a "claim for a prescriptive easement, like a claim for adverse possession, is *in the nature of an equitable claim* and was historically tried in the courts of equity." *Id.* (emphasis added). Lastly, we concluded that plaintiff was not entitled to a jury trial on his equitable claim. *Id.* Nowhere in our discussion did the absence of a claim for money damages take on dispositive significance.

4. Again, this concern must be subordinate to a clear command of the Alaska Constitution.

5. On this point the *Pernell* court noted that "the right to be tried by jury was recognized by statute [in the District of Columbia] for over a century ... and it does not appear to have posed any unmanageable problems during that period." *Pernell*, 416 U.S. at 384, 94 S.Ct. at 1734.