Filed 3/25/13  Schindelar v. Neefe CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SUSAN M. SCHINDELAR et al., Individually and as Trustees, etc., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> RICHARD NEEFE et al., <br><br> Defendants, Cross-complainants and Respondents. | D059639 <br><br><br> (Super. Ct. No. GIC857198) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven R. Denton, Judge.  Affirmed.

In November 2005 Susan M. Schindelar and Edward W. Sznyter III (collectively Schindelar-Sznyter), individually and as trustees of their family trust, sued Richard Neefe and Sherri Nolan (collectively Neefe-Nolan), claiming Neefe-Nolan's remodeling of their home resulted in various encroachments on their property.  In March 2007 the parties

executed a settlement agreement, which resolved the disputes. The settlement agreement required the parties to mutually exchange easements. From March 2007 through June 2009 counsel for Neefe-Nolan attempted to finalize the exchange of the easements required under the settlement agreement, but no agreement could be reached.

In May 2009 Neefe-Nolan filed a complaint for breach of contract against Schindelar-Szynter alleging they refused to cooperate regarding the exchange of easement deeds. !(1 AA 121-128)! Schindelar-Szynter answered and filed a cross-complaint alleging Neefe-Nolan failed to comply with the settlement agreement. Thereafter the parties filed cross-motions to enforce the settlement agreement under California Code of Civil Procedure[1] section 664.6.

In ruling on the motions, the court made findings regarding the parties' rights and obligations with respect to the easements in dispute. The court required the parties to redraft the proposed easements in accordance with its findings. The parties met and conferred in order to redraft the easement deeds. However, Schindelar-Sznyter refused to sign the revised deeds. Because of their refusal to sign the deeds, Neefe-Nolan sought an order from the court appointing an elisor to execute the easement deeds, which the court granted.

Schindelar-Sznyter, appealing in propria persona, assert (1) the court impermissibly "modif[ied]" the settlement agreement; (2) because the terms of the "settlement agreement depend on the acceptance by a license board," it was error for the

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

court to substitute its own "guess at what would be accepted"; (3) the court erred by appointing "an elisor to record legal documents before a judgment [was final]"; and (4) the court erred by forcing Schindelar-Sznyter to sign the deeds that were "constructed to abrogate terms of the settlement agreement." We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Background*

Neefe-Nolan have lived at the property located at 16212 Orchard Bend Road in Poway (the Neefe-Nolan property) since 1993. When they originally purchased the property it came with certain rights to use the neighboring property located at 16208 Orchard Bend Road (the Schindelar-Sznyter property), some of which were of record, others of which were not. In May 2000 they purchased an expanded easement and right-of-way for ingress and egress for the installation, operation, maintenance and replacement of a gate, wall, sewer, telephone, gas, and other utility lines over the Schindelar-Sznyter property for $5,000 from its former owner, Deanna Stevens.

Schindelar-Sznyter purchased their property in or around 2001.

B. *The Schindelar-Sznyter v. Neefe-Nolan Action*

In November 2005 Schindelar-Sznyter sued Neefe-Nolan for (1) removal of encroaching structures, (2) trespass, and (3) nuisance. They contended that improvements constructed by Neefe-Nolan, including a retaining wall, a pilaster for Neefe-Nolan's entry gate, a mailbox, and certain landscaping, encroached on their property.

3

Neefe-Nolan cross-complained, contending they had the right to maintain those improvements by virtue of recorded easements and long-standing use.

B. *Settlement of Schindelar-Sznyter v. Neefe-Nolan Case*

On February 23, 2007, the parties engaged in a mediation before retired Judge Vincent DiFiglia that resulted in a settlement of their disputes.

The settlement agreement addressed the following issues: (1) relocation of Neefe-Nolan's mailbox; (2) removal of rocks by Neefe-Nolan in order to not impede access of Schindelar-Sznyter to the Schindelar-Sznyter property; (3) removal by Neefe-Nolan of a trash pad and trash day coordination; (4) parking on the easement; (5) placement of a turnaround; (6) the grant to Neefe-Nolan of an easement for encroaching pilasters; (7) release of certain landscaping rights by Neefe-Nolan; (8) the grant to one another of an exclusive easement for landscaping (subject to approval by Schindelar-Sznyter); and (9) a grant by Schindelar-Sznyter to Neefe-Nolan of an easement to allow the retaining wall already in existence to remain.

With regard to the grant of an easement in favor of Neefe-Nolan for the encroachment of their pilasters, the agreement provides:

> "[Schindelar-Sznyter] agree to grant [Neefe-Nolan] an easement for the encroaching pilaster. The pilaster easement shall exist for so long as the pilaster remains. If the pilaster shall ever be removed, this easement shall terminate. [Neefe-Nolan] shall be responsible for preparing the legal description for this easement in their favor subject to the approval by [Schindelar-Sznyter]."

4

In addition to the easement to allow the encroaching pilasters, Schindelar-Sznyter also agreed to grant Neefe-Nolan a landscape easement that included the area around the pilasters. That portion of the agreement provides:

> "[Schindelar-Sznyter] grant[] [Neefe-Nolan] an exclusive easement for landscaping and sprinklers in the area of the gate [e]asement east of a line drawn between the centerposts of the two outer pilasters and east of the existing walls. The cost of the sprinkler system and irrigation shall be borne solely by [Neefe-Nolan]. [Neefe-Nolan] shall be responsible for preparing the legal description for this easement in their favor subject to the approval by [Schindelar-Sznyter]."

In addition to the pilaster and landscaping easements, the settlement agreement also provides "[Schindelar-Sznyter] will grant [Neefe-Nolan] an easement for the existing retaining wall to remain." In turn, Neefe-Nolan agreed to reduce the height of the retaining wall to the lowest level permitted by the City of Poway's requirements.

Additionally, the settlement agreement provides that Neefe-Nolan "shall erect a fence of approximately 3 feet in height on [their] [p]roperty adjacent to the retaining wall that will prevent [Neefe-Nolan's] guests from trespassing on the [Schindelar-Sznyter] property above the retaining wall."

The settlement agreement also provides for a poolside easement as follows, "[Neefe-Nolan] grant[] [Schindelar-Sznyter] an exclusive easement for landscaping and sprinklers in the area described by [Neefe-Nolan's] proposed easement of February 6, 2002 . . . . [Schindelar-Sznyter] shall be responsible for preparing the legal description for this easement in their favor subject to the approval by [Neefe-Nolan]."

5

By March 2007 Neefe-Nolan had relocated their mailbox, removed rocks existing along the north edge of the turnabout driveway, removed the trash can pad from behind the gate, stored trash receptacles on their property alone, refrained from parking in the easement below the gate and walls, and had not expanded the turnaround driveway area. Neefe-Nolan could not, however, unilaterally complete the obligations related to the pilaster easement, the reciprocal landscaping easement or the retaining wall easement since those items required cooperation and approval by Schindelar-Sznyter.

C. *Efforts To Prepare Required Easements*

As part of the settlement, the parties were to review and approve legal descriptions for the easements to be exchanged, after which deeds reflecting the easements would be recorded. However, efforts to obtain Schindelar-Sznyter's cooperation creating, exchanging and executing the easement deeds were unsuccessful.

D. *Neefe-Nolan File Action To Enforce Settlement Agreement*

Because no agreement could be reached, Neefe-Nolan filed a complaint for breach of the settlement agreement, setting forth their efforts to finalize that agreement and Schindelar-Sznyter's failure to cooperate. Schindelar-Sznyter filed a cross-complaint, alleging that it was Neefe-Nolan who breached the settlement agreement.

E. *Cross Motions To Enforce the Settlement Agreement*

The parties agreed to resolve the actions by filing cross-motions to enforce the settlement agreement pursuant to section 664.6. The court issued a tentative ruling on the motions on July 23, 2010. On July 27, 2010, the parties appeared before the trial court for oral argument on the cross-motions to enforce the settlement agreement. At the

6

hearing, counsel for the parties addressed three main issues of dispute:  the gate pilaster easement, the retaining wall easement, and the landscaping easement regarding the area adjacent to Schindelar-Sznyter's pool.

1.  *Ruling on gate pilaster easement and landscaping easement around pilasters*

In its tentative ruling, the court stated that the "easement proposed by [Neefe-Nolan] . . . appears to encompass a larger area then what is described within the settlement agreement.  To the extent [Neefe-Nolan's] proposed easement encompasses a larger area, it is incorrect and must be redrafted."  During the hearing on the motion, counsel for Neefe-Nolan provided the court with a depiction of the pilaster landscape easement area.  Counsel highlighted a line on the exhibit that counsel contended was the "line drawn between the center posts of the two outer pilasters" and "east of the existing wall" referred to in paragraph 8 of the settlement agreement.  The boundary as highlighted by Neefe-Nolan showed a line that follows the undulation of the retaining wall.  Schindelar-Sznyter disagreed and maintained the proper interpretation of the landscape easement was what they had previously submitted.  The court took the motion under submission.

On August 2, 2010, the trial court issued its final ruling regarding the cross-motions to enforce the settlement agreement.  With respect to the easement for the gate pilaster and landscaping around the gate and wall, the court ruled as follows:  "[Neefe-Nolan's] interpretation of the language is more reasonable, and is adopted by the court.  Thus, this easement encompasses two areas.  First, the area on the east side of a line drawn between the centerposts of the two outer pilasters to the west side of the wall and

7

gate. Second, the area on the east side of the existing wall and gate to [Neefe-Nolan's] property line. Thus, the exhibit [Neefe-Nolan] provided the court during the hearing . . . denotes the correct easement."

   2. *Ruling on easement for existing retaining wall*

In their motion to enforce the settlement agreement, Schindelar-Sznyter asserted the purpose of allowing Neefe-Nolan to keep the retaining wall was because "neither party knew with certainty what wall height would allow [Neefe-Nolan] to support their house addition . . . ." Schindelar-Sznyter also contended through their expert that no retaining wall was necessary to support the additions to the Neefe-Nolan property. Based on the evidence they presented, Schindelar-Sznyter requested the court rule "that the wall can be removed and that the grading easement complies with the Settlement Agreement."

Neefe-Nolan contended that, according to their expert, a two-course reduction in the existing retaining wall would comport both with the express language in the settlement agreement stating "retaining wall to remain" and with the requirement the wall be reduced to the lowest level which would be permitted by the City of Poway.

With respect to the retaining wall issue, in its tentative ruling the trial court concluded "the court finds that a two-course reduction in the wall's height satisfies [Neefe-Nolan's] obligation under paragraph 9 of the settlement agreement."

On August 2, 2010, the court issued its final ruling with respect to reducing the height of the retaining wall: "Regarding the retaining wall, the agreement contemplates an area of level ground adjacent to the room addition. This intention is supported by the necessity of a fence in order to prevent [Neefe-Nolan's] guests from trespassing onto

8

[Schindelar-Sznyter's] property. The retaining wall contemplated in [Schindelar-Sznyter's] reply brief does not accomplish this intention." As to the wall height issue, the court confirmed its tentative ruling that a two-course reduction of the height of the retaining wall was proper.

 3. *Ruling on poolside easement*

 With respect to this issue, the parties were essentially in agreement regarding the location of the easement. In its tentative ruling, the court indicated the landscaping easement adjacent to Schindelar-Sznyter's pool was incorrect only regarding the obligation to maintain the trees in that area and needed to be redrafted on that basis. In its final ruling the court confirmed its tentative ruling as it related to the pool's landscaping easement.

 E. *October 22, 2010 Order*

 Upon receipt of the trial court's final rulings, efforts were undertaken to exchange easement deeds in accordance with the trial court's rulings. However, no agreement could be reached regarding the easement locations, nor the language for necessary easement deeds. Accordingly, on October 22, 2010, Neefe-Nolan filed a proposed order confirming the court's ruling on the cross-motions to enforce the settlement agreement, which the court signed.

 F. *Clarification of the Trial Court's Ruling*

 The parties were unable to reach an agreement concerning the deeds which would reflect the court's ruling. Therefore, at a status conference on November 19, 2010, the court instructed the parties to exchange proposed deeds by December 20, 2010, after

9

which a simultaneous exchange/filing of briefs responding to the proposed deeds would be filed on January 7, 2011.

The court also set a follow-up hearing for January 13, 2011, at which time the court would select the proposed deeds which most accurately reflected the terms of the court's rulings.

At the follow-up hearing the court provided clarification as to how the settlement agreement was to be interpreted. The court addressed the language of the deeds and made further orders regarding any modifications to the proposed deeds that would be necessary to ensure that they complied with the court's prior rulings. The parties were then ordered to meet and confer in order to prepare and record final deeds relating to the easements to be exchanged.

The court also stated that if there was ongoing refusal to execute the deeds as reflected in the court's ruling, an elisor could be appointed upon request.

G. *Court's Appointment of an Elisor and Entry of Judgment*

On March 28, 2011, because Schindelar-Sznyter continued to refuse to execute deeds necessary to finalize and record the easements, Neefe-Nolan filed an ex parte application for filing of judgment and appointment of elisor. In that application, Schindelar-Sznyter's continued refusal to execute the deeds was detailed.

After consideration of the ex parte application and oral argument from the parties, the court ordered the appointment of an elisor for purposes of executing the necessary easement deeds. At the same time, the court also entered a final judgment reflecting its prior order.

10

## DISCUSSION

### I. *WAIVER*

In their opening brief, Schindelar-Sznyter cite no legal argument or authority in support of their claim the court erred in its interpretation of the settlement agreement. "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830); see also Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"].)

Here, Schindelar-Sznyter raise four different issues to be addressed by this court in the section of their brief entitled "Questions Presented." However, they provide no legal authority or argument to show how the court erred in ruling on these issues. Thus, they have waived the right to challenge the court's ruling on appeal.

Further, as we shall discuss, *post*, even if we were to reach the merits of Schindelar-Sznyter's contentions on appeal, we would conclude the court did not err.

### II. *MERITS*

#### A. *Standard of Review*

"A trial court, when ruling on a section 664.6 motion, acts as a trier of fact. [Citation.] Section 664.6's 'express authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement.' [Citation.] The proper standard of review, therefore, is whether the trial court's ruling [construing] the settlement . . . is supported by substantial evidence." (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889.)

11

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted.)

B. *Analysis*

1. *There was no modification of the settlement agreement*

The court did not "modify" the settlement agreement as Schindedlar-Sznyter assert. Rather, the trial court *interpreted* the terms of the settlement agreement in light of the evidence presented by *both* parties. As a result, substantial evidence supports the trial court's rulings.

2. *Retaining wall easement*

As is discussed, *ante*, Schindelar-Sznyter agreed to grant Neefe-Nolan "an easement for the existing retaining wall to remain." In exchange, Neefe-Nolan agreed to "reduce the height of the retaining wall to the lowest level as permitted by the City of Poway's requirements."

On appeal, Schindelar-Sznyter contend the trial court erred in its interpretation of the retaining wall easement because the settlement agreement required a "license board"

12

to approve the proposed changes to the retaining wall and instead of relying on a "license board" the trial court substituted its own "guess" for what it thought would be accepted.

Schindelar-Sznyter have cited no authority for the proposition that there is a requirement that a "license board" approve the proposed changes to the retaining wall. Indeed, the settlement agreement contains no such requirement. Moreover, the trial court did not "guess" with respect to its interpretation of the retaining wall easement. Instead, the court based its decision on the language of the settlement agreement, along with evidence presented by the parties. Thus, the court did not err in its decision on this issue.

3. *Appointment of an elisor*

The appointment of an elisor is one method available to a court for enforcement of its judgments. (*Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635.) Among other functions, an elisor can be appointed for "deed and document execution" where there are "recalcitrant litigants who refuse to obey orders of the court." (*Id.* at p. 1635, fn. 2.) "Where one of the parties will not or cannot execute a document necessary to carry out a court order, the clerk of the superior court or his or her authorized representative or designee may be appointed as an elisor to sign the document." (Super. Ct. San Diego County, Local Rules, rule 2.5.11.)

Schindelar-Sznyter assert that the court erred in appointing an elisor to sign the deeds because they were "constructed to abrogate terms of the settlement agreement" and the appointment was done before a final judgment was entered. As discussed, *ante*, however, Neefe-Nolan presented evidence that Schindelar-Sznyter refused to sign the deeds, which were consistent with the court's ruling, as ordered by the court. Further,

13

Schindelar-Sznyter have provided no authority for the proposition that a final judgment must be entered before an elisor may be appointed. In fact, the record shows that the court entered its final judgment simultaneously with the appointment of the elisor. Moreover, the court did not force Schindelar-Sznyter to sign deeds that "abrogated" the terms of the settlement agreement. The court, relying on evidence presented by each side, interpreted the settlement agreement and determined that the deeds prepared by Neefe-Nolan conformed to the terms of the settlement agreement. Thus, appointment of an elisor was proper under the circumstances.

## DISPOSITION

The judgment is affirmed. Neefe-Nolan shall recover their costs on appeal.


NARES, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.


14