Filed 4/14/15  Wunch v. Richardson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK A. WUNCH, | D065544 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-CU-OR-CTL) |
| DEANNA M. RICHARDSON, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of San Diego County, John S. Meyer, Judge.  Appeal dismissed.

Mele & Ros and Jose Ramon Ros for Plaintiff and Appellant.

The Law Office of Robin Jean Sassi and Robin Jean Sassi for Defendant and Respondent.

Plaintiff Mark A. Wunch appeals the court's orders granting respondent DeAnna M. Richardson's two separate ex parte applications: 1) ordering Wunch to accept a

buyer's offer to purchase their jointly owned residential rental property, and 2) appointing an elisor to sell the property.[1]

Wunch contends: (1) the court lacked jurisdiction to "modify" the judgment by granting the ex parte applications; (2) Richardson's ex parte applications did not comply with California Rules of Court requiring a supportive declaration; (3) his due process rights were violated because Richardson did not properly notice her ex parte applications; and (4) the court ordered sale of the property to Richardson's mother violated Richardson's fiduciary duties to the partnership under Corporations Code section 16404.

Richardson requests that we dismiss this appeal as moot because the property has been sold and there is no remedy. Richardson has also moved for sanctions against Wunch for filing this frivolous appeal. We dismiss the appeal because the completed sale has rendered the appeal moot. We decline to impose sanctions.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, Wunch sued Richardson, his former girlfriend and business partner, for breach of a partnership contract, and sought dissolution of their partnership and sale of their jointly-owned residential property located in San Diego (the property). Wunch alleged he and Richardson each owned an undivided one-half interest in the property, but Richardson had not participated equally with her time and money in administering the property. Wunch claimed he should "be equitably allowed the first

_____

[1] An elisor is a person appointed to perform certain functions such as deed and document execution in cases involving recalcitrant litigants who refuse to obey court orders. (*Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635, fn. 2.)

2

right to purchase the property in order to avoid economic waste by selling to a third party."  In his trial brief, Wunch elaborated:  "[Wunch] should be granted the first right of purchase of the property.  The two existing mortgages on the property are already solely in his name.  Furthermore, [he] is financially capable and willing to purchase the property, based on the current appraised value.  [Richardson] is insolvent and unable to purchase the property.  [¶]  Furthermore, granting first right of purchase to [him] would be the most cost effective option and would benefit both parties.  If the property was sold in the open market, [he and Richardson] would lose approximately 6 [percent] of the sales price due to the commissions and about 2 [percent] in closing costs.  Based on the current appraised value of $375,000, that would result in a $30,000 loss to [him and Richardson]."  (Some capitalization omitted.)

In a April 25, 2013 declaration Wunch submitted with his ex parte application for order shortening time of trial, he repeated his claim Richardson lacked finances to buy the property, and requested its sale either to him or on the open market.

In October 2013, following a bench trial, the court ruled in Wunch's favor, ordering the partnership's dissolution, division of the partnership account, and sale of the property "AS IS to the highest bidder forthwith for at least the appraised value of $375,000.00.  Net proceeds, or losses, to be divided equally between the parties."  The court retained jurisdiction over the matter.

In November 2013, Wunch filed an ex parte application to compel sale of the property and appointment of a real estate broker.  Wunch stated in a declaration that he filed the application because Richardson was objecting to the court's ordered sale of the

3

property on the open market. He claimed the property's value had increased and could be sold in the range of $475,000 to $510,000. The court denied the application. No transcript exists of the hearing on that motion because a court reporter was not retained.

In December 2013, Richardson filed an ex parte application for a court order requiring Wunch to accept a purchase offer from Rosemary Benefield, who is Richardson's mother. Wunch opposed the application in writing, arguing that a sale to Benefield would violate: (1) the court's judgment that the property be sold to the highest bidder; (2) Richardson's fiduciary duty under Corporations Code section 16404 because of Richardson's relationship to Benefield; and (3) Code of Civil Procedure section 663,[2] which requires a formal motion to vacate a judgment and enter a new one.

Wunch's counsel renewed those arguments orally at the ex parte hearing. He also argued that a real estate broker had informed him the property's value had increased from $375,000 to approximately $470,000. Wunch requested the property be placed on the open market instead of being sold to Benefield. The court asked Wunch's counsel whether any specific prospective buyer was ready to pay $470,000 for the property, but counsel did not identify any, stating that the property had not been publicly marketed.

At the December 5, 2013 hearing, Richardson's counsel represented to the court that Benefield had offered $385,000 in cash for the property and would pay closing costs by the end of December, 2013.

---

[2]     All statutory references are to the Code of Civil Procedure unless otherwise stated.

4

The court ascertained Wunch had stipulated to the property's value in this colloquy:

"The Court: . . . [T]he parties stipulated to the value of the property.

"[Richardson's counsel]: They did at [$375,000].

"The court: Isn't that correct?

"[Wunch's counsel]: That is true, your honor. They estimated [that] but that appraisal, which is—my client had to do—it is old. The market conditions have changed.

"The court: The market has changed since your client stipulated to the value of the property?

"[Wunch's counsel]: They stipulated to the appraisal. The appraisal was [$375,000] or higher and the defendant did not take the time to do their own appraisal and spend [$375,000], but your honor, this is a very classic situation of dissolving a partnership. You have a major asset and it needs to be liquidated, it needs to be sold in the open market and to the highest bidder. [¶] Having here a partner trying to sell the property to her mother for [$100,000] less of fair market value is a violation of the fiduciary duty of loyalty.

"The court: At the trial your client stipulated that the property is worth [$375,000] and the mother is paying more than that.

"[Wunch's counsel]: I understand, your honor. But the issue is that they are preventing the property to be sold in the open market to the highest bidder, which is what your honor ordered, and if there is . . . nobody else within a reasonable time that offers more than . . . Ms. Richardson's mother would be the highest bidder, but if this is correct

5

and the property is worth a hundred thousand dollars more, they are trying to take advantage of this situation.

"The court: I remember the case and I am satisfied your client does not want his ex-partner or whatever she was to have anything to do with the property.

"[Wunch's counsel]: That is—

"The court: And that is my recollection and that is, I think, what is going on. Your client stipulated that the property was worth $375,000. Her mother now is going to pay more than that without a broker, without any closing costs and—"

Ruling it would "hold [Wunch] to his stipulation that the property is worth $375,000," the court granted Richardson's ex parte application and ordered the sale to Benefield at that price. The court advised Richardson that if Wunch refused to sell the property, she could request the court appoint an elisor.

On March 4, 2014, the court granted Richardson's ex parte application to appoint an elisor to sell the property.[3]

On March 5, 2014, Wunch filed a notice of appeal but did not post a bond under section 917.2.

On March 19, 2014, Wunch filed a lis pendens with the San Diego County Recorder's office.[4]

---

[3]    We have not located a copy of Richardson's moving papers in the record, but the record shows the court granted the application.

[4]    Richardson notes in her motion to dismiss this appeal that Wunch never lodged the lis pendens in the trial court.

On March 24, 2014, the elisor signed the grant deed transferring ownership of the property to Benefield.

On April 4, 2014, the grant deed was recorded.

On April 15, 2014, Wunch filed an ex parte application requesting delivery of the grant deed to Wunch's counsel, confirmation of an automatic stay of appeal under section 916, and an order that Wunch collect rent and be authorized to pay the mortgage that Richardson assertedly was not paying. In an attached declaration, Wunch stated: "Since the appeal in this case stays this proceeding, and [Richardson] should have not taken any steps to bypass the automatic stay and persuade the elisor to sign a grant deed and deliver the grant deed to [Richardson's attorney], the grant deed should be ordered to be deliver [*sic*] to [Wunch's] attorney for his destruction, or to keep on hold until the final determination of the pending appeal. [¶] . . . [¶] I respectfully request the deed is set aside pending the result of the appeal, and because the execution of the deed by elisor is does [*sic*] not comply with the court order. In addition, preserving the status quo is necessary in order to sell the property on the open market for a fair and just market value of approximately $500,000, instead of allowing [Richardson] to profit to the detriment of the partnership if she sells the . . . property to her mother for $375,000." (Some capitalization omitted.)

On April 16, 2014, the court denied Wunch's ex parte application.

On August 8, 2014, Richardson moved to dismiss the appeal, and for sanctions against Wunch for filing a frivolous appeal.

7

On August 18, 2014, we granted Wunch's request for a time extension to file an opposition to Richardson's motions.

On September 15, 2014, Wunch filed an opposition to the motion to dismiss the appeal but without addressing the issue of sanctions.

DISCUSSION

I. *Claim of Due Process Violation*

Wunch contends that the court violated his due process rights by granting Richardson's ex parte applications, noting Richardson did not comply with Rule of Court, rule 3.1202, subdivision (c)'s requirement that she submit a supportive declaration. He correctly cites to the controlling law:  " ' "The fundamental requisite of due process of law is the opportunity to be heard." [Citation.]  The hearing must be "at a meaningful time and in a meaningful manner." [Citation.]  In the present context these principles require that a recipient have timely and adequate notice.' " (*Goldberg v. Kelly* (1970) 397 U.S. 254, 267.)

 However, Wunch misapplies the law.  The record shows that besides receiving adequate notice and taking the opportunity to file opposition papers, Wunch's attorney attended the ex parte hearing and raised the same arguments as on appeal.  At that hearing, the court specifically stated that an elisor would be appointed if Wunch refused to cooperate with the order to sell the property.  Therefore, Wunch was on notice the court would grant Richardson's subsequent ex parte application.

Wunch's contention regarding the rule of court violation is belied by documents he includes in the appellant's appendix; specifically, Richardson's attorney's timely filed

8

declaration supporting her first ex parte application: "I have attempted to meet and confer with [Wunch] to no avail. [He] refuses to sell the property. Ms. Benefield's offered [*sic*] was accepted by Defendant, DeAnna M. Richardson, on October 11, 2013." Wunch has not explained, and we fail to see, how this declaration fails to comport with due process requirements or that of California Rules of Court, rule 3.1202, subdivision (c).

## II. *Modification of Judgment Claim*

Wunch contends the judgment became final in October 2013, when the court ordered the property sold; therefore, the court's subsequent orders for the property's sale to Benefield and the appointment of an elisor were impermissible modifications of the prior judgment. He claims Richardson was required to file a noticed motion under section 473, subdivision (b), which provides that the court "may upon any terms as may be just, relieve a party or his or legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Wunch also relies on section 663, which states: "A judgment or decree, when based upon a decision by the court . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside the statement of decision shall be amended and corrected."

9

We reject Wunch's analysis because its premise—that by granting Richardson's ex parte applications the court modified its October 2013 judgment—is fundamentally flawed. The reality is that at the ex parte hearing, the same judge who had presided over the trial did nothing more than confirm that Wunch previously had stipulated to the value of the property, and entered an order holding Wunch to his prior stipulation. On four occasions the court had the opportunity to review its original judgment—upon ruling on Richardson's two ex parte applications and on Wunch's two ex parte application—and each time the court found no inconsistency between its original judgment for sale of the property to the highest bidder and its subsequent orders to sell the property to Benefield, and appoint an elisor.

We conclude that sections 473 and 663 are inapplicable here because in the ex parte applications, Richardson did not seek, and the court did not grant her, relief from the court's earlier judgment. Richardson did not seek to set aside or vacate the court's judgment, or claim that the judgment was erroneous. Rather, the court did not err in finding that the sale of the property to Benefield complied with its order because the operative considerations in both the original judgment and the postjudgment orders were that the sale price be at least the amount the parties had stipulated to and the sale would be completed speedily. Moreover, despite stating in his trial brief he was willing to bid on the property, Wunch failed to do so; the trial court could reasonably conclude that if Wunch, who wanted to be the first to purchase the property did not bid on it when the stipulated value was $375,000, no higher bidder would be found for it at approximately

10

$470,000; therefore it was preferable not to have a bidding process that would further delay the sale that had been ordered conducted forthwith.

The court's challenged postjudgment rulings were permissible under the court's inherent authority to enforce its judgment under section 128, subdivision (4), providing that every court shall have the power to "compel obedience to its judgments, orders, and process . . . in an action or proceeding pending therein." (Accord, *Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1314 [no abuse of discretion shown in trial court's order exercising its authority under section 128].)

The appointment of an elisor is one method available to a court for enforcement of its judgments. (*Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635.) "Where one of the parties will not or cannot execute a document necessary to carry out a court order, the clerk of the superior court or his or her authorized representative or designee may be appointed as an elisor to sign the document." (Super. Ct. San Diego County, Local Rules, rule 2.5.11.)

### III. *Breach of Fiduciary Duty Claim*

We quote Wunch's contention on this point in its entirety: "[Wunch's] opposition papers also discussed that under California Corporation[s] Code [section] 16404, [Richardson's] ex parte request to sell the partnership real property to her mother for less than fair market value to the detriment of the partnership and its partners was a breach of her fiduciary duty to the partnership. An oral objection was also presented on this issue, but the court ignored it[.]"

An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 (*Guthrey*); Cal. Rules of Court, rule 8.204(a)(1)(C).) As a general rule, "[a]n appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Wunch did not satisfy the requirements of providing adequate legal analysis for this contention; we therefore treat it as waived.

IV. *Richardson's Motion to Dismiss this Appeal*

Richardson argues the court's postjudgment orders to sell the property and appoint an elisor are moot because Benefield now owns the property and this court can no longer grant Wunch relief from the appealed orders.

Wunch counters: "This court of appeal would have no difficulty in directing the trial court to fashion a proper remedy. In fact, the reversal of the orders on appeal would provide an adequate remedy, since anyone who acquires an interest in real property with constructive knowledge that the property is subject to litigation, takes that interest subject to any judgment, or order that may be entered in the lawsuit."

12

Having rejected all of Wunch's appellate contentions, we have no occasion to remand this matter to the trial court. "Generally, courts decide only 'actual controversies' which will result in a judgment that offers relief to the parties. [Citations.] Thus, appellate courts as a rule will not render opinions on moot questions: '[W]hen, pending an appeal from the judgment of a lower court, and without fault of the [respondent], an event occurs which renders it impossible for [the reviewing court] if it should decide the case in favor of [appellant], to grant [appellant] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' [Citations.] The policy behind this rule is that courts decide justiciable controversies and will normally not render advisory opinions." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179.)

Wunch has not disputed Richardson's claim he failed to file a copy of the lis pendens with the superior court. Therefore, he appears to misapprehend the law regarding the legal effect of the lis pendens he recorded and the lack of an automatic stay. He claims Benefield "stepped into [Richardson's] shoes when she obtained a grant deed to the real property being fully aware of the pending litigation, the recorded lis pendens, and having been personally served with the notice of appeal." (Some capitalization omitted.) Section 405.23 states: "Any notice of pendency of action shall be void and invalid as to any adverse party or owner of record unless the requirements of Section 405.22 [requiring filing of the lis pendens in the superior court] are met for that party or owner and a proof of service . . . has been recorded with the notice of pendency of

13

action."  Therefore, the lis pendens Wunch recorded was void and invalid because he failed to file it in the superior court.

In pursuing this appeal, Wunch, as a joint tenant, had a right to possession of the property, but he did not post an undertaking under section 917.4, which provides an exception to the general rule in section 916 that a court loses jurisdiction over a case after judgment is entered.  Section 917.4 states:  "The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property which is in the possession or control of the appellant or the party ordered to sell, convey or deliver possession of the property, unless an undertaking in a sum fixed by the trial court is given that the appellant or party ordered to sell . . . the property will not commit or suffer to be committed any waste thereon . . . ."  Therefore, as the trial court concluded, here the sale was not automatically stayed pending this appeal, and the court did not err in ordering the sale.  (Accord, *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 36-37.)

Here, the property was properly sold pursuant to the trial court's order. "Consequently, this court cannot fashion any order which would have the effect of reversing the trial court's order of sale or otherwise preventing the sale of the property, an event which has already occurred."  (*First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798, 801.)  Therefore, this appeal is moot.

14

V. *Motion for Sanctions*

Richardson requests that we impose sanctions against Wunch in the amount of $30,376.50 for her attorney fees and costs. She contends Wunch's appeal was without merit and taken to increase her litigation costs and to delay the property's sale.

Richardson also submits documents supporting her claim that Wunch engaged in a series of actions aimed at delaying the property's sale. Specifically, Richardson states that after filing this appeal, Wunch contacted her with settlement offers requiring her to accept the offer within one day and pay him additional monies, in exchange for him to dismiss the lawsuit. Wunch's attorney sent Richardson an email stating that she should abstain from taking any action to sell the property because a stay was in place pending this appeal. An escrow company's agent informed Richardson it refused to proceed with the property sale during the pendency of this appeal, asserting an automatic stay was in place.[5] Wunch refused to sign the grant deed, thus obligating Richardson to file an ex parte application for an elisor.

*Applicable Law*

Section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Rule 8.276 (a) of the California Rules of Court gives us the authority to "impose sanctions . . . on a party or an attorney for: [¶] . . . Taking a frivolous appeal or

---

[5] Richardson adds that after filing this appeal, Wunch sued Benefield in a pending superior court case, alleging causes of action for imposition of constructive trust, unjust enrichment, quiet title, declaratory relief, injunctive relief, conversion, accounting, and cancellation of instrument. We do not consider these claims in resolving this appeal.

15

appealing solely to cause delay."  The California Supreme Court has explained that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).)

In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards.  The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective.  (See *Flaherty, supra,* 31 Cal.3d at pp. 649-650.)  Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit.  (*In re Walters' Estate* (1950) 99 Cal.App.2d 552, 558.)

The objective and subjective standards "are often used together, with one providing evidence of the other.  Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay."  (*Flaherty, supra,* 31 Cal.3d at pp. 649-650.)  An unsuccessful appeal, however, " 'should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law.' "  (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422.)

16

Richardson argues Wunch had two improper subjective motives for prosecuting this appeal: "(1) he did not want his ex[-]girlfriend [Richardson] to have anything to do with the property, and (2) he was attempting to make more money off the property by delaying the sale." She further argues that under the objective standard, Wunch's appeal lacked merit because he failed to acknowledge the proper standard of review; he misrepresented the record by falsely labeling the court's postjudgment orders as "modifications"; his argument regarding the breach of fiduciary duty cause of action is incoherent and not supported by authority; he distorts the record and has no basis in law or fact for his contentions; and his appeal is moot.

*Analysis*

We do not regard Richardson's claim that Wunch brought this appeal for purposes of delay as sufficient grounds for imposing sanctions. The notice of appeal was filed on March 5, 2014, and the title deed granting Benefield ownership of the house was recorded on April 4, 2014. Therefore, Richardson's relief was not significantly delayed by the filing of the appeal.

On the other hand, Richardson was not prompt in bringing her motion for dismissal and sanctions, despite the fact the mootness of Wunch's claim was apparent from the date the title deed was recorded. Richardson filed her motions for sanctions and dismissal on August 8, 2014, and September 15, 2014 respectively. A leading treatise includes a practice pointer on this matter: "Of course, the earlier an appeal is dismissed, the greater respondent's saving of time and expense (especially in preparing a brief). Thus, it is to respondent's advantage to file a motion to dismiss as soon as the grounds

17

become apparent . . . . [¶] Also consider that, where dismissal is discretionary with the court of appeal, the court may be less amenable to granting a motion to dismiss filed after substantial court time has been invested in preparing for a determination on the merits. For this reason, respondent's counsel may have an implicit *obligation* to move for dismissal at the *earliest* possible opportunity to save the court the time and effort of working up a case unnecessarily." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 5:41, p. 5-22.)

Richardson also claims the appeal is frivolous and lacks merit. Despite having concluded this appeal is moot, we do not think it is entirely lacking in merit. Wunch had a marginally colorable claim that the trial court did not sell the property to the highest bidder because although Benefield originally offered $385,000, the court ordered it sold for the stipulated price of $375,000. Therefore, we conclude this appeal was not totally and completely without merit under the standard set forth in *Flaherty, supra,* 31 Cal.3d at page 650.

Finally, although we decline to impose sanctions, we take strong exception to Wunch's misrepresentation in this appeal that he was not required to post a bond and the appeal was automatically stayed. His claim he had no right to possession of the property following the court's sale order is flatly contradicted by his conduct after filing this appeal: he recorded a lis pendens stating he had filed an appeal and "[t]he action affects title to or right to possess the real property [identified by address and parcel number]."

DISPOSITION

The appeal is dismissed.  DeAnna M. Richardson shall recover her costs on appeal.  Richardson's motion for sanctions is denied.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

McINTYRE, J.